Juan Enrique Soltero Peralta, Plaintiff and Appellant, *v.* Secretary of the Treasury of Puerto Rico, Defendant and Appellee.

No. 12733. Decided September 14, 1962.

Appellant appeared on his own behalf. *J. B. Fernández Badillo, Solicitor General, Genoveva R. Carrera,* and *Juan E. Faría, Assistant Solicitors General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On September 5, 1958 [1] appellant Juan E. Soltero Peralta filed a partial appeal challenging the pronouncement included in the judgment rendered by the trial court which declared as taxable income the amount of the monthly pension granted to him by the University of Puerto Rico upon retiring from his professorship for physical disability after having rendered fifteen years of service. In the brief presented the appellant argued that "it is an essential question, of a constitutional nature, that no income tax may be levied on a compensation resulting from disability, which as a matter of fact is not an income."

As it may be noted, this appeal does not raise a substantial constitutional question (§ 14 of the Judiciary

---

[1] Act No. 115 of June 26, 1958 which amended § 14 of the Judiciary Act, became effective on the following July 31, *Bermúdez* v. *Ortiz*, 80 P.R.R. 683 (1958).

Act, as amended by Act No. 115 of June 26, 1958, 4 L.P.R.A. (1961 Supp.), p. 210; Rule 53.2 of the Rules of Civil Procedure of 1958) on which we may exercise our jurisdiction on appeal. *Fuentes* v. *Secretary of the Treasury*, 85 P.R.R. 472 (1962). As stated in *Godreau* v. *Godreau*, 296 F.2d 326 (1961), it is not sufficient to assert an alleged constitutional question when the issue raised, once it is properly dilucidated, merely claims that the decision below was wrong, for "mere error does not raise a constitutional question." However, pursuant to paragraph (f) of § 14 of the Judiciary Act, as amended by Act No. 115 of June 26, 1958, *supra*, we shall consider the present appeal as one for review and we shall decide the issue raised on its merits.

▓ Pursuant to the provisions of § 7 of Act No. 135 of May 7, 1942, 18 L.P.R.A. § 638, the Superior Educational Council approved an order on November 28, 1950 [2] establishing a retirement plan for the personnel of the University of Puerto Rico. Under its provisions a person covered thereunder could retire in the following cases:

1—Compulsory retirement—(Art. 5, section 14) :—upon having reached 65 years of age, unless the service is extended by annual periods, but in no case, after having reached 70 years of age.

2—Optional retirement—(Art. 5, section 13)—a) upon reaching 55 years of age provided he has rendered 25 years of service, and, b) upon reaching 58 years of age with 10 years of service.

3—Deferred retirement—(Art. 6, sec. 15) :—any member less than 58 years of age who has rendered 10 years of

---

[2] On February 21, 1945 a similar plan had been established which was expressly repealed by the order of November 28, 1950. This latter order provided that the plan established thereunder would become effective on July 1, 1949—§ 3—and, therefore, it governs appellant's case to whom a pension was granted on July 29, 1950.

The retirement plan established in 1950 has been subsequently amended by the Superior Educational Council at its meetings on June 6, 1951, September 11, 1951, and June 3, 1954.

service may apply for retirement to begin receiving the corresponding pension upon reaching said age.

4—Retirement for physical or mental disability—(Art. 9, section 24):—any person having less than 58 years of age who has rendered 15 years of service [3] may apply for retirement upon proof of said mental or physical disability to continue in the discharge of his office.

An annual pension of $1,650.81 was granted to the taxpayer, who was one time Associate Professor of the Faculty of Economy of Social Sciences of the University of Puerto Rico, "for physical disability" after having rendered fifteen years of service. The Secretary of the Treasury included the payments received during the years 1951 to 1954, both inclusive, in appellant's taxable income.

Section 15(b)(6) of the Income Tax Act of 1924, 13 L.P.R.A. § 694(b)(6), provides that the term gross income does not include "amounts received, through accident or health insurance or under workmen's compensation Acts, as compensation for personal injuries or sickness, ..." A similar provision is contained in the Act of 1954 in § 22(b)(5), 13 L.P.R.A. § 3022 (Supp.) by virtue of which an identical solution is applied for all the tax years involved in this action.[4]

██ ██ In general terms it may be affirmed that the payments made as compensation for services already rendered constitute taxable income, *Flax* v. *Treasurer*, 76 P.R.R. 365, 368 (1954). Thus, the pension granted to an employee in consideration and recognition for a prolonged period of services rendered to the State, constitutes compensation for such services and should be included as part of the taxpayer's income, *Emmanuelli* v. *Secretary of the Treasury*, 76 P.R.R.

---

[3] At present only 10 years of service are required to be entitled to retirement for physical or mental disability.

[4] Article 70 of the Regulations for the 1924 Act and § 141(a)(1)-1(b) of the Regulations for the 1954 Act, 13 R.&R.P.R. § 3141(a)(1)-1(b) do not shed any light on the problem under consideration.

889 (1954); *cf. Treasurer* v. *Tax Court*, 70 P.R.R. 467 (1949), even though said pension has been granted under a special law, *Treasurer* v. *Tax Court*, 73 P.R.R. 830 (1952). It is of significant importance to determine, therefore, whether the pension payments received by the taxpayer correspond, among other factors, to the rendition of services for a specific period of time.

■ However, when the retirement pension obeys *exclusively* to a physical or mental disability derived from or connected with the scope of the employment, the amounts received on that account are not to be included in the gross income because they partake of the nature of workmen's compensations. *Frye* v. *United States*, 72 F. Supp. 405 (D.C. D.C. 1947) is the leading case for the rule set forth, but as stated in the opinion rendered, the question depends ultimately on the language of the statute in question.[5] See, also,

---

[5] The section of the retirement plan for physical or mental disability, insofar as pertinent reads as follows:

"*Disability Annuity.* Upon total and permanent disability *due to any cause* occurring prior to an employee's attainment of the age of 58 years, a member who shall have completed at least 15 years of total service and who shall be mentally or physically incapacitated for the performance of duty shall be entitled to a disability retirement annuity...

"A member shall be considered to be physically or mentally incapacitated and entitled to a disability retirement annuity when it is found upon medical examination by a physician or physicians designated by the board that he is unable because of such disability to perform properly the duties of his regularly assigned position in the service of the University.

. . . . . . . . . . . .

"The disability retirement annuity shall, in any event, be reduced by any amounts received by the member as workmen's compensation under any applicable workmen's compensation laws."

As may be seen from a mere reading thereof, provision is made for a pension for disability "for any cause" whether occupational or not. The provision on the reduction of the pension or payment of any sum awarded to the retired employee for compensation for labor accidents is in harmony with the former provision which permits the retirement for any cause and does not have the importance that appellant attributes to it of converting the pension *in every case* in an annuity for occupational disability. It was likewise provided for the case where the employee receives payments for disability under the Social Security Act.

*Doogan* v. *United States*, 154 F. Supp. 703 (Ohio 1957) ; *Riley* v. *United States*, 156 F. Supp. 751 (Ct. Cl. 1957) ; *William L. Neill*, 17 T.C. 1015 (1951) ; I.T. 3917, CB 1948-2, p. 10; I.T. 3877, CB 1947-2, p. 15; I.T. 3281, CB 1939-1, p. 97; 1 MERTENS, Law of Federal Income Taxation 57, § 7.20. Where in order to obtain retirement it is necessary to have rendered services for a specific period of time—although less if it concurs with a disability—the general rule is applied and the payments received are taxable, *Waller* v. *United States*, 180 F.2d 194 (D.C. 1950) ; *Allen* v. *Spencer*, 214 F.2d 205 (D.C. 1954) ; *Gerald W. McDonald*, 33 T.C. 540 (1959) ; *Marshall Sherman Scarce*, 17 T.C. 830 (1951) ; *Joseph B. Simms*, 17 T.C. 1 (1951) ; *Elmer D. Pangburn*, 13 T.C. 169 (1949) ; Rev. Reg. 269, CB 1958-2, p. 16; I.T. 3760, CB 1945-1, p. 54; I.T. 3428, CB 1940-2, p. 60.

 As may be noted, the pension granted under the retirement plan for the University personnel and designated "for physical or mental disability" requires, to be awarded, that the employee should have rendered services to the institution for at least 15 years. That is, it is not sufficient that the disability should take place while the employee is on duty, but there should also concur the requirement of services for a minimum number of years. In this sense, it is but an advanced retirement for years of service. The petitioner could have retired with only 10 years of service if he had been 58 years of age, but since he had not reached that age, he is allowed to be pensioned "for disability" after having rendered 15 years of service. In the above-cited cases in which it was held that the pension received was not to be included in the individual income tax return, the Retirement Act did not require service for a specific number of years, but only that the disability should arise in the course of the employment and as a result thereof.[6]

---

[6] By way of comparison, see § § 9 and 10 of the Government Personnel Retirement Act, Act No. 447 of May 15, 1951, as amended, 3 L.P.R.A. § § 769

Furthermore, appellant likewise failed to establish that his disability was occupational. In the course of an argument in the trial court, the taxpayer stated that "I became a cripple going up and down the stairs, remaining standing for a long time, I was the victim of hemorrhages and I was about a year and a half under treatment," but no evidence was offered to that effect. In any event, in view that services for a specific period is required in addition to the disability to continue in the employment, this fact is of no practical importance.

The respondent court did not err in deciding that the payments received by the appellant were to be included in his gross income. The writ issued will be quashed and the judgment rendered by the Superior Court, San Juan Part, on June 20, 1958, will be affirmed.

and 770 (1961 Supp.), which deal with occupational and nonoccupational disability annuity. For the granting of a pension in the case of occupational disability, it is only required that it be a disability "arising out of and in the course of an employment"; in the case of nonoccupational disability it is required that the member shall have 10 years of creditable services.

See, also, § 6 of Act No. 12 of October 19, 1954, 4 L.P.R.A. § 238 (1961 Supp.), which deals with disability pensions in the Retirement System for the Judiciary and which requires at least 10 years of service.