**Archie P. SHERAR and Terry A. Sherar,
Appellants,**

**v.**

**UNITED STATES of America,
Appellee.**

**No. 22910.**

United States Court of Appeals
Ninth Circuit.

June 24, 1969.

Archie P. Sherar, pro. per.

Carolyn Just, Washington, D. C. (argued), Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Chester C. Davenport, Jr., Attys., Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., Richard L. Carico, Asst. U. S. Atty., of counsel, San Francisco, Cal., for appellee.

Before HAMLEY, HAMLIN and ELY, Circuit Judges.

HAMLIN, Circuit Judge:

Archie P. Sherar and Terry A. Sherar, appellants herein, after the denial of their claim for a tax refund timely filed this action therefor in the United States District Court for the Northern District of California. That court on January 23, 1968, granted the government's motion for summary judgment. A timely appeal was taken to this court. We affirm.

The facts show that the parents of appellant Archie P. Sherar owned and oper-

**2.** See also Tim v. American President Lines, 9 Cir. 1969, 409 F.2d 385 [March 18, 1969].

ated a gift shop in Spokane, Washington, from 1953 to January 17, 1967. During that period the senior Sherars purchased certain store fixtures and equipment, and used them in the operation of the gift shop. The senior Sherars listed the gift shop for sale in March, 1963. From then until about December 31, 1966, the parents were attempting to sell the gift shop. On July 1, 1964, appellant Terry A. Sherar purchased the store fixtures and equipment of the gift shop from the senior Sherars, and on the same day leased the store fixtures and equipment back to the parents. The sale and lease-back transaction was entered into by them to broaden the market for potential buyers of the gift shop.

After the sale and lease-back transaction had been made, the senior Sherars continued to operate the gift shop; and they used the store fixtures and equipment continuously in their business. On January 17, 1967, the senior Sherars sold the inventory of the gift shop and subleased the equipment and fixtures with an option to purchase to another party.

Appellants' suit for a refund of 1962 income taxes is based on a carryback of a claimed investment credit for the year 1964. Appellants claim that they were entitled to the credit allowed by section 38 [1] of the Internal Revenue Code of 1954 by virtue of the sale and leaseback transaction on July 1, 1964, in which appellant Terry A. Sherar was the buyer-lessor of the store fixtures and equipment. 26 U.S.C. § 38 allows a credit for investment in certain property, subject to regulations prescribed by the "Secretary or his delegate." 26 U.S.C. § 46 (a) (1) bases the credit upon an investment in either "new section 38 property" or "used section 38 property." It was stipulated in the district court that the fixtures and equipment involved were not "new section 38 property" in the hands of appellant Terry A. Sherar. Therefore, the appellants are entitled to an investment credit only if the fixtures and equipment constitute "used section 38 property."

■ Initially, the store fixtures and equipment are eligible for an investment credit, since 26 U.S.C. § 48(a) (1) broadly defines section 38 property as "tangible personal property." However, section 48(c) (1) [2] provides in part, "Property shall not be treated as 'used section 38 property' if, after its acquisition by the taxpayer, it is used by a person who used such property before such acquisition * * *." The transaction entered into by the appellants with the senior Sherars is squarely covered by the language of the statute. After the store fixtures and equipment were purchased by one of the appellants, they continued to be used by the senior Sherars, who had used them before the purchase. Indeed, Treasury Regulation § 1.48–3(a) (2) (i) (1954 Code) amply supported by legislative history, shows that it is precisely a sale and lease-back arrangement of the type under review here that the above-quoted portion of section 48(c) (1) is aimed at.

■ The appellants contend, however, that section 48(c) (1) is not applicable, because the use made of the fixtures and equipment by the senior Sherars after the sale and lease-back transaction was not "substantial." Appellants rely on language in S. Rep. No. 1881, 87th Cong., 2d Sess. (1962–3 Cum. Bull., p. 863), which declares, "For purposes of applying the rule contained in section 48(c) (1), property will be considered used by a person only if a sub-

---

1. Title 26 U.S.C. § 38.

"(a) General Rule. There shall be allowed, as a credit against the tax imposed by this chapter, the amount determined under subpart B of this part."

2. 26 U.S.C. § 48(c) (1).

"In general. For purposes of this subpart, the term 'used section 38 property' means property acquired by purchase after December 31, 1961, which is not new section 38 property. Property shall not be treated as 'used section 38 property' if, after its acquisition by the taxpayer, it is used by a person who used such property before such acquisition * * *."

stantial use is made." Appellants argue that "substantial" must be equated with "valuable," and that the senior Sherars' use of the fixtures and equipment was not valuable because the gift shop was not returning a profit. This argument is very wide of the mark. The appellants overlooked the concluding portion of the statement in S. Rep. No. 1881, which states, "Thus, property would not be disqualified as used section 38 property merely because a person using the property after acquisition had also made some *casual* use of it before acquisition." (emphasis added). See also Reg. § 1.48–3(a) (2) (ii). Thus, the statute is concerned with the nature of the use, not with the profit made from the use.

Here, the senior Sherars clearly made a "substantial use" of the store fixtures and equipment. They were used both before and after the sale and lease-back transaction as integral parts of a business. The use of the equipment, far from being "casual," was continuous from their date of purchase by the senior Sherars until their sale in 1967. It follows that the appellants are not entitled to an investment credit.

Affirmed.