EDWARD A. MORADIAN AND GEORGIA MORADIAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3228–67. Filed November 12, 1969.

*George F. Belyea,* for the petitioners.
*Jeffrey E. Boly,* for the respondent.

#### OPINION

FAY, *Judge:* Respondent determined a deficiency of $2,624.50 in petitioners' Federal income tax for the taxable year 1964. Petitioners not only contest this deficiency but also seek an overpayment in the amount of $1,134.70.

Petitioners have conceded certain issues. The only issue remaining for decision is whether petitioners are entitled to an investment credit in 1964 as a result of the purchase of certain property in that year.

All of the facts have been stipulated and are found accordingly.

Petitioners Edward A. and Georgia Moradian were husband and wife during the taxable year in question. They were residents of Fresno, Calif., at the time of the filing of their petition in this case. For the taxable year 1964, petitioners filed their joint Federal income tax return with the district director of internal revenue, San Francisco, Calif. Hereinafter only Georgia Moradian will be referred to as petitioner.

In 1944, Edward A. Moradian (hereinafter referred to as Edward) entered into a farming partnership with Nick Hagopian (hereinafter

referred to as Hagopian). Shortly before the formation of this partnership, they had purchased tracts of land in Madera County, Calif., taking title to such land in their joint names as tenants in common. Together they conducted a successful farming operation on such land as a partnership until its dissolution in May 1964. The income of this partnership was derived principally from raising and selling grapes.

On the Federal income tax returns filed by the Moradian-Hagopian partnership from 1944 to 1964, the profits and losses reported therein, attributable to its farming operations, were divided equally between Hagopian and Edward.

A substantial part of the assets used by the partnership in producing grapes consisted of mature grapevines with varying useful lives. All of the activities necessary to the productivity and preservation of these vines were supervised by Hagopian and Edward jointly. It was their usual practice to hire independent contractors to prune and harvest. Irrigation was usually handled by their employees. Both Hagopian and Edward often personally performed the tractor operations such as spraying, cultivating, and fertilizing.

On June 5, 1964, Hagopian conveyed an undivided one-half interest in the aforementioned realty to petitioner. Immediately prior to this conveyance, the Hagopian-Moradian farming partnership had been dissolved.

Petitioner did not personally use the vines in question before June 5, 1964. After that time, Edward and petitioner continued the grape-farming operation which had been previously conducted by the Hagopian-Moradian partnership under the name of Gem Farms. Gem Farms filed a partnership Federal income tax return for 1964 in which the profits reported were divided equally between petitioner and Edward.

On their 1964 joint Federal income tax return, petitioners claimed an investment credit of $3,500 attributable to Georgia Moradian's purchase of the assets in question.

Petitioner has selected one section of grapevines valued at $26,107.50 with a 33-year useful life and another section of grapevines having a useful life of 20 years and worth $23,892.50, as the specifically identifiable items of used section 38 property selected for the investment credit. Respondent disallowed the claimed investment credit thereby creating a deficiency for the taxable year 1964.

The sole question presented for decision is whether the property in question acquired by petitioner in 1964 constitutes "used section 38 property" for which a limited investment credit is provided in section 48(c). Section 48(c)(1) provides:

(c) USED SECTION 38 PROPERTY.—

(1) IN GENERAL.—For purposes of this subpart, the term "used section 38 property" means section 38 property acquired by purchase after December 31,

1961, which is not new section 38 property. Property shall not be treated as "used section 38 property" if, after its acquisition by the taxpayer, it is used by a person who used such property before such acquisition (or by a person who bears a relationship described in section 179(d)(2)(A) or (B) to a person who used such property before such acquisition).

Thus, section 48(c)(1) contains a two-pronged limitation. The first part denies a taxpayer the benefits of the investment credit if the property was used prior to the acquisition by the same person who uses such property after the acquisition. The second part, found in the parenthetical clause, similarly denies an investment credit to a taxpayer where the property was used before and after acquisition, by related parties.

Focusing our attention first on the parenthetical portion of section 48(c)(1), we think that it is plain, and respondent does not contend otherwise, that such provision does not exclude petitioner from the benefits of that section. Under section 48(c) and section 179(d)(2)(A) referred to therein, the prohibited relationships described in section 707(b) are also applicable to section 48(c). Two controlled partnerships are related under section 707(b) only if "the same persons own, directly or indirectly, *more than 50 percent* of the capital interests or profits interests" in such partnership. (Emphasis added.) Prior to petitioner's acquisition of the property in question, it constituted an integral part of the farming operation conducted by the Hagopian-Moradian partnership. This partnership consisted of two equal partners, Edward, petitioner's husband, and Hagopian. Following her acquisition, the same farming operation continued to be conducted by Gem Farms, a partnership in which Edward and petitioner each had a 50-percent interest. Since Gem Farms and the Hagopian-Moradian partnership had only one common partner, namely Edward, and he did not own a more than 50-percent interest in either partnership, the two partnerships were unrelated for the purpose of section 48(c). The parenthetical clause in section 48(c), therefore, does not deny petitioner an investment credit in the instant case.

Respondent insists, however, that petitioner is not entitled to an investment credit for "used section 38 property" under the first part of the limitation found in section 48(c)(1). He asserts that the property in question was used after petitioner's acquisition by "a person who used such property before such acquisition." His conclusion rests upon the proposition that the use by a partnership is attributable to each partner individually. Thus, he reasons that since Edward used the property prior to petitioner's acquisition as a result of his membership in the Hagopian-Moradian partnership and also used it following such acquisition because of his partnership interest in Gem Farms, petitioner is precluded from claiming an investment credit upon her

purchase of the property in question. In so doing, respondent relies heavily upon Income Tax Regs., section 1.48–3(a), which provides:

Sec. 1.48–3    Used section 38 property.

(a) *In general.* (1) * * *

(2) (i)  Property shall not qualify as used section 38 property if, after its acquisition by the taxpayer, it is used by (a) a person who used such property before such acquisition, or (b) a person who bears a relationship described in section 179(d)(2) (A) or (B) to a person who used such property before such acquisition. * * *

(ii)  For purposes of applying subdivision (i) of this subparagraph, (a) property used by a partnership shall be considered as used by each partner, * * *

*        *        *        *        *        *        *

(3)  The provisions of this paragraph may be illustrated by the following examples:

*        *        *        *        *        *        *

*Example* (5). * * * if F buys C's [one-third] interest in partnership CDE, such acquisition would not result in the acquisition of used section 38 property by F * * * because the partnership property is used after F acquires his interest, by the same persons (partners D and E) who used the property before the acquisition.

Petitioner does not dispute the applicability of the foregoing regulation to the facts of this case. She instead challenges the validity of the regulation.[1]

The Commissioner is authorized under section 7805 to prescribe all needful rules and regulations for the enforcement of the tax laws. In addition, under section 38(b) he is instructed to prescribe rules necessary to carry out the purposes of the investment credit. Such regulations, insofar as consistent with expressed statutory provisions, have the force of law. *Maryland Casualty Co.* v. *United States*, 251 U.S. 342 (1920). They must be sustained unless unreasonable and plainly inconsistent with revenue statutes. *Commissioner* v. *South Texas Co.*, 333 U.S. 496 (1948). However, the power of the Commissioner to prescribe regulations for the administration of the tax laws is not unlimited. A regulation which operates to create a rule out of harmony with the statute is a mere nullity. Not only must the regulation be consistent with the statute, it must be reasonable. *Manhattan Co.* v. *Commissioner*, 297 U.S. 129 (1936).

We have considered the relationship of section 48(c)(1) with other sections of the Code. We have also determined in our best judgment the intent of Congress in introducing the concept of investment credit and the reasons behind its limitations. In our view, under the particular facts in this case the respondent's position and regulations cited to the

---

[1] In a recent case, *James T. McKay*, T.C. Memo. 1968–276, we were confronted with the same issue but found it unnecessary for our decision in that case to rule on the validity of the above-quoted regulation. We held that the taxpayer therein owned more than 50 percent of the partnership. The taxpayer in that case was therefore precluded from claiming an investment credit under the parenthetical clause in sec. 48(c)(1).

extent they support his position are contrary to the intent of Congress as expressed in the statute and in the committee reports and are to that extent invalid.

We shall first focus our attention upon the relevant statutory provisions dealing with the investment credit and then consider the underlying legislative history as it bears upon these provisions.

As we noted earlier, section 48(c)(1) contains a dual restriction on the availability of an investment credit for used property. The first part concerns the use after acquisition by the *same* person who used it before such acquisition. The second part, enclosed in parentheses, excludes property used before and after acquisition by *related parties* from the definition of used section 38 property. Respondent would have us attribute the use of property by a partnership to each of its members individually and therefore deny petitioner an investment credit under the first part of the limitation.

We cannot accept his interpretation for two reasons. In the first place, respondent's reading of this subsection virtually nullifies the parenthetical portion of such subsection insofar as it relates to partnerships. The parenthetical portion refers to section 179(d)(2) which in turn refers to section 707(b). The latter section sets up a "more than 50 percent" rule in determining whether in transactions between two partnerships or between a partnership and member partner, losses realized are to be allowed. In effect, section 707(b) treats partnerships with 50-percent or less common control as separate and unrelated entities. In incorporating the rules of section 707(b) into section 48(c), Congress obviously intended that the same rules are to apply with respect to the used-property investment credit. Respondent's treatment of the Hagopian-Moradian partnership and Gem Farms, in which there was only 50-percent common control, as the same partnership under the nonparenthetical portion of section 48(c)(1), plainly renders the parenthetical part to the extent it refers to section 707(b) entirely superfluous.

Moreover, respondent's argument is premised upon his failure to treat the partnership entity as a "person" for purposes of section 48(c)(1) and instead treating it as an aggregate of individuals. He would have us treat each partner individually as the "person" referred to in section 48(c)(1). In maintaining this position, respondent ignores the meaning assigned to the term "person" by section 7701(a)(1).[2] "Person" is therein defined to include a partnership unless otherwise distinctly expressed or manifestly incompatible with the intent of a particular section.

---

[2] SEC. 7701. DEFINITIONS.

(a)(1) PERSON.—The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.

We think that for the purposes of section 48(c) a partnership is to be treated as an entity as distinguished from the individual partners.[3] We thereby give effect to the definition of "person" contained in section 7701(a)(1) and at the same time render meaningful and significant, the reference to sections 179 and 707 found in the parenthetical clause of section 48(c)(1). Moreover, this conclusion does not create a fertile opportunity for abuse by allowing an investment credit where a minor shift in the ownership of a partnership occurs because the parenthetical portion of section 48(c)(1) treats partnerships as related persons if the percentage of common ownership between two partnerships exceeds 50 percent.

Turning now to the legislative history, the investment credit provisions were first enacted in the Revenue Act of 1962, Pub. L. 87–834, 76 Stat. 960, and were designed "to provide a stimulant to the economic growth of this country" [4] and as such reflected a desire, as outlined in the President's 1962 Economic Report to increase the "profitability of productive investment by reducing the net cost of acquiring new equipment" and thereby to "stimulate investment" and "increase the competitiveness of American exports in world markets." [5] Consistent with the legislative purpose behind the investment credit, we think Congress intended a liberal reading of the statute. See *Schuyler Grain Co.*, 50 T.C. 265, 272 (1968), affd. 411 F. 2d 649 (C.A. 7, 1969).

A limited credit was made available for used property which is newly acquired because of the greater dependence of small business on used property.[6] However, "To prevent abuse" [7] the limitations referred to above concerning prior use by the same or related individuals were incorporated in the provision granting a credit for used property. The abuse contemplated by Congress is revealed in the following excerpt from its committee report:

Thus, if property were sold under a sale and leaseback arrangement, such property in the hands of the purchaser-lessor would not be used section 38 property since the property, after its acquisition, is being used by the same person who used it before the acquisition. Similarly, where a taxpayer has been leasing

---

[3] Compare *Fritz Busche*, 23 T.C. 709 (1955), affirmed per curiam 229 F. 2d 437 (C.A. 5, 1956), citing *Commissioner* v. *Whitney*, 169 F. 2d 562 (C.A. 2, 1948), where we held that a partnership is to be treated for sec. 267 purposes as an aggregate of individuals. Unlike sec. 267, sec. 48(c) contains provisions pertaining to partnerships. Also, in the case of sec. 267, the disallowance affects only the related partner whereas if we were to adopt respondent's position, all the members of the partnership would be denied an investment credit. As respondent states in his brief, if there were even a 10-percent common partner between the two partnerships, no partner would be entitled to an investment credit. Moreover, sec. 48(c) has treated the partnership as an entity with respect to the $50,000 limitation contained in sec. 48(c)(2)(D). Finally, the purposes of secs. 267 and 48 are entirely different.

[4] H. Rept. No. 1447, 87th Cong., 2d Sess., 1962–3 C.B. 405, 411.

[5] H. Rept. No. 1447, *supra*.

[6] H. Rept. No. 1447, *supra* at 413.

[7] H. Rept. No. 1447, *supra* at 414.

property, and subsequently purchases such property * * *, such property is not used section 38 property with respect to such taxpayer * * * In addition, if property owned by a lessor is sold subject to a lease or is sold upon the termination of a lease, the property will not qualify as used section 38 property with respect to the purchaser, if thereafter the property is used by a lessee who used the property before the acquisition. * * * [S.Rept. No. 1881, 87th Cong., 2d Sess., 1962-3 C.B. 707, 862-863.]

We note the absence of any reference to partnerships in this respect. In a recent case, *Sherar* v. *United States*, 413 F. 2d 986 (C.A. 9, 1969), the Court of Appeals for the Ninth Circuit noting particularly the legislative history of section 48(c)(1) has, consistent with our interpretation of that section, applied the limitation contained herein to a sale-and-leaseback transaction stating that it is precisely a sale-and-leaseback arrangement at which the limitation of section 48(c)(1) is aimed.

We infer from the illustrations set forth in the above-quoted committee report that the abuse envisioned by Congress was the possibility that an investment credit be procured by an individual under circumstances in which the purposes of the investment credit are not served. Since Congress allowed an investment credit to stimulate the economy by encouraging business to invest in additional capital equipment, where the asset acquired continues to be used by the same person who used it before the acquisition, no such goals are furthered by granting an investment credit in such situations. Therefore, as described in the Senate report a lessee who purchases an asset from his lessor is denied any investment credit.

Unlike the lessee situation, the petitioner here has experienced a growth in her own business activities by virtue of her acquisition of the assets in question. The fact that the assets were used in a preexisting business is not determinative, as respondent implies. Clearly the benefits of the investment credit have been granted to an individual who purchases an entire preexisting business. The economy is strengthened by the ready turnover of businesses and business assets and Congress has so indicated by extending the investment credit to used property. The crucial factor is the occurrence of a change in the use as well as ownership of the assets. A change in use occurred at the time of the acquisition in question since, as we concluded earlier, Gem Farms and Hagopian-Moradian were different entities. Because Congress realized that the identities of two partnerships tend to merge with one another as their common ownership increases, a 50-percent rule was incorporated in section 48(c)(1) by cross-reference to section 179(d)(2) in the parenthetical portion.

For the foregoing reasons, we conclude that the person who used the property in question after the acquisition, namely, Gem Farms, is not

the same or related to the person who used such property before such acquisition. We therefore hold that petitioner was entitled to an investment credit in the year 1964.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

SCOTT, *J.*, dissenting: In my view it is not necessary to determine in this case whether the provision of section 1.48–3(a), Income Tax Regs., that "property used by a partnership shall be considered as used by each partner" is invalid. In this case, Edward A. Moradian, the husband of petitioner who acquired the property, Georgia Moradian, owned an undivided one-half interest in the land on which the partnership operated its business of raising and selling grapes. The property to which the grapevines were attached was never owned by the partnership and the record does not show the agreement, if any, which the partners had with the partnership respecting the use of the land. Certainly the persons who owned the land owned the vines attached thereto absent any agreement to the contrary. In my view Edward A. Moradian, the owner of the land, used the property by allowing the partnership in which he owned a 50-percent interest to use the property in the operation of its business. This was a use by him and his wife, Georgia, of the property within the meaning of section 48(c) (1), I.R.C. 1954, which includes as a user of the property a person who bears the relationship described in section 179(d)(2)(A) to the person who used the property. Section 179(d)(2)(A) refers to section 267 for a definition of relationship and section 267(c)(4) specifically mentions a spouse. Therefore, this case should be considered in the same light as if Edward, himself, had acquired his former partner's undivided interest in the land.

Even though a partnership is considered a person under the definition contained in section 7701(a)(1), a partnership is not a taxable entity and therefore it is not uncommon for a partnership to use property belonging to the partners without any formal agreement. Section 704 deals with the treatment of property contributed to a partnership by the partners, and in recognition of the common practice of use by a partnership of property, title to which is retained by the partners, section 1.704(c)(1), Income Tax Regs., states that "These rules do not apply to property only the use of which is permitted the partnership by the partner." Since a partnership is not a taxable entity there is no impelling reason for two partners who own an equal undivided interest in property to contribute the property to the partnership. In fact if they do contribute the property to the partnership, absent a

provision to the contrary in the partnership agreement, it is treated under section 707 (c)[1] as if it had not been contributed. Likewise, where the two partners own equal undivided interests in property there is no necessity for a lease by them of the property to the partnership. If an owner of property leases his property to another, the use by the owner of the property is easily recognizable.

Edward A. Moradian used the property which he owned jointly with his partner by permitting its use by the partnership. Since Edward A. Moradian had an undivided one-half interest in the property, he used some portion of all the property and not any specific portion of the property. I would, therefore, decide that the property which Georgia Moradian acquired was used by her husband prior to the time she acquired it and would not reach the question of the validity of section 1.48–3 (a), Income Tax Regs.

TIETJENS, J., agrees with this dissent.

---

TANNENWALD, J., dissenting: I cannot agree that the "entity" theory of partnerships is the touchstone for disposing of this case. Even if that theory is determinative of issues involving the applicability of the provisions of the Code dealing with partnerships (secs. 701 through 708), it clearly need not be applied beyond those provisions. Thus the conference report at the time of the enactment of the 1954 Code specifically states:

> Both the House provisions and the Senate amendment provide for the use of the "entity" approach in the treatment of the transactions between a partner and a partnership which are described above. No inference is intended, however, that a partnership is to be considered as a separate entity for the purpose of applying other provisions of the internal revenue laws if the concept of the partnership as a collection of individuals is more appropriate for such provisions. An illustration of such a provision is section 543 (a) (6), which treats income from the rental of property to shareholders as personal holding company income under certain conditions. [H. Rept. No. 2543, 83d Cong., 2d Sess., p. 59 (1954).]

[1] Sec. 704 (c) CONTRIBUTED PROPERTY.—

(1) GENERAL RULE.—In determining a partner's distributive share of items described in section 702(a), depreciation, depletion, or gain or loss with respect to property contributed to the partnership by a partner shall, except to the extent otherwise provided in paragraph (2) or (3), be allocated among the partners in the same manner as if such property had been purchased by the partnership.

(2) EFFECT OF PARTNERSHIP AGREEMENT.—If the partnership agreement so provides, depreciation, depletion, or gain or loss with respect to property contributed to the partnership by a partner shall, under regulations prescribed by the Secretary or his delegate, be shared among the partners so as to take account of the variation between the basis of the property to the partnership and its fair market value at the time of contribution.

(3) UNDIVIDED INTERESTS.—If the partnership agreement does not provide otherwise, depreciation, depletion, or gain or loss with respect to undivided interests in property contributed to a partnership shall be determined as though such undivided interests had not been contributed to the partnership. This paragraph shall apply only if all the partners had undivided interests in such property prior to contribution and their interests in the capital and profits of the partnership correspond with such undivided interests.

This legislative admonition is especially apt in construing a complex set of provisions such as those dealing with the investment credit, the more so when it is recognized that section 38(b) confers upon the Secretary of the Treasury or his delegate specific statutory authority to "prescribe such regulations as may be necessary to carry out the purposes of" those provisions. It has long been established that such a grant of discretion furnishes powerful support for regulations and that they should not be declared invalid unless clearly contrary to the legislative mandate. *Commissioner* v. *South Texas Co.*, 333 U.S. 496 (1948); *Lucas* v. *American Code Co.*, 280 U.S. 445 (1930). If for no other reason, *Manhattan Co.* v. *Commissioner*, 297 U.S. 129 (1936), relied upon by the majority, is distinguishable in that no specific legislative grant of authority was involved.

In this case, it cannot be denied that Edward Moradian physically used the property and that, after the acquisition of Hagopian's partnership interest by Georgia Moradian, the property continued physically to be used in the same business operations—a business in which Edward Moradian continued to have a substantial, i.e., 50-percent interest.

Concededly, there may be some latent difficulties in sustaining respondent's regulations under any and all circumstances, e.g., if Edward Moradian had only a 1-percent interest in the Hagopian-Moradian partnership. But these same difficulties, to a large extent, inhere in the application of sections 267 and 707(b), apart from any problem involving the investment credit, stemming from the fact that neither section, by its terms, deals with partnerships where family relationships are involved. Compare sec. 1.267(b)–1(b)(1), Income Tax Regs. In addition, the problem is further complicated in the investment credit area by the facts that section 48(c) provides for total disallowance of the credit, section 267 provides for partial disallowance of losses, and section 179(d), which is the connecting strand between these sections, uses the phrase, "the disallowance of losses"—an equivocation, to say the least, since the word "the" can be construed to encompass partial or total disallowances, or both.

Given the factual circumstances involved herein and the statutory background heretofore outlined, I cannot say that respondent's attempt to fill in the lacunae represents an unwarranted extension of the statute. The application of the within regulations to a situation where a "related" person continues to have a *substantial* interest in the ownership and use of the property, in my opinion, reasonably implements the intention of the Congress in circumscribing the credit in respect of used section 38 property.

DRENNEN, RAUM, and ATKINS, *JJ.*, agree with this dissent.