**Joseph L. HOLLOMAN and Ruth Ann Holloman, Petitioners-Appellees,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**No. 76–1037**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

May 9, 1977.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Gilbert T. Andrews, Act. Chief, Appellate

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Sect., U. S. Dept. of Justice, Meade Whitaker, Chief Counsel, I. R. S., Elmer J. Kelsey, Murray S. Horwitz, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for respondent-appellant.

Richard F. McDivitt, Felix Bowman, McIntyre, & McDivitt, Thomas F. McIntyre, Byrne A. Bowman, Oklahoma City, Okl., for petitioners-appellees.

Before AINSWORTH, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This case involves income tax deficiencies of $779.36 and $1,430.09 for the years 1968 and 1971, respectively, which were assessed against the taxpayer after the Commissioner disallowed the claimed investment credit for 1971 and the carryback to 1968. The Tax Court disagreed with the Commissioner and allowed the investment credit and carryback. *Holloman v. Commissioner*, T.C.M. 1975–309 (Oct. 7, 1975). We affirm.

The facts are undisputed. Taxpayer, a dentist, was an employee of Dr. B. J. Blankenship from October to December 31, 1970. On January 1, 1971, the two men formed a partnership with each owning a fifty percent interest. Dr. Blankenship retained ownership of the dental equipment and leased it to the partnership until August 31, 1971, when the partnership was terminated. Taxpayer bought out Dr. Blankenship's fifty percent interest in the partnership, and purchased the dental equipment for $31,500.

On his 1971 tax return, taxpayer claimed an investment credit on the dental equipment as "used section 38 property," as defined in section 48(c)(1) of the Internal Revenue Code, and filed an amended return for 1968 in order to claim a carryback for the unused 1971 investment credit. The Commissioner disallowed the investment credit and the carryback on the ground that the taxpayer had used the equipment in his practice prior to its acquisition in 1971.

The investment tax credit was adopted by Congress in the Revenue Act of 1962, Pub.L. 87–834, 76 Stat. 960, by injecting a new section 38, and sections 46, 47, and 48, which prescribe the rules governing the "section 38 investment credit." 26 U.S.C.A. §§ 38, 46–48; 5 Mertens, *The Law of Federal Income Taxation* § 32A.01 (1975) (hereinafter cited as 5 Mertens). The investment credit may be offset directly against income tax liability. There are certain limitations on the amount of tax credit that may be used in one year. 26 U.S.C.A. § 46(a)(2); *see* 5 Mertens § 32A.02. With respect to the credit which is unused because of these limitations, there is provided a 3-year carryback and a 7-year carryover. 26 U.S.C.A. § 46(b); *see* 5 Mertens § 32A.06. To be eligible for the credit, the property must be "new section 38 property" or "used section 38 property."

Section 48(c) of the Internal Revenue Code of 1954 defines the term "used section 38 property" but excludes from such treatment property used by the same person before and after acquisition. Section 48(c) provides:

*Used section 38 property.—*

(1) *In general.*—For purposes of this subpart, the term "used section 38 property" means section 38 property acquired by purchase after December 31, 1961, which is not new ·section 38 property. Property shall not be treated as "used section 38 property" if, after its acquisition by the taxpayer, it is used by a person who used such property before such acquisition (or by a person who bears a relationship described in section 179(d)(2)(A) or (B) to a person who used such property before such acquisition).

The section 48(c)(1) denial of investment credit to taxpayers where the same person has used the property before and after its acquisition was intended to prevent abuse of the investment credit provisions when there has been no real change in ownership or use of the property. *See* S.Rep.No.1881, 87th Cong., 2d Sess., U.S.Code Cong. & Admin.News p. 3304, 1962–3 C.B. 707, 862–863;

H.R.Rep.No.1447, 87th Cong., 2d Sess., 1962–3 C.B. 413–414.

Since there is no question in this case that the dental equipment is "section 38 property acquired by purchase after December 31, 1961, which is not new section 38 property," the critical question is whether the property is disqualified by virtue of its having been used prior to its acquisition by the purchasing taxpayer as a fifty percent partner in the partnership that leased the equipment, and subsequent to its acquisition by him as sole owner.

The Commissioner focuses on two points of prior use: first, the dentist-taxpayer physically used the equipment both before and after he purchased it; second, to the extent that the partnership used the equipment, the taxpayer is charged with that use because he is a fifty percent partner in the partnership.

■ The first contention fails because the reference to use by a person in section 48(c)(1) does not mean the individual person who actually physically used the equipment, but refers to the legal entity which was using the equipment.

The second contention fails because of the law which treats the partnership as a separate person, except as it might apply to a "more than 50 percent" partner.

■ The idea that the credit should be denied, if the same person physically uses the equipment before and after purchase, falls in analysis. This would mean that if a taxpayer started a new business and purchased equipment from another wholly unrelated taxpayer and then hired to operate the equipment the same person who had operated it for the former owner, there would be no credit. Such an interpretation of the statute would carry out no purpose for which the statute was passed. If the statute had intended such a result, it could easily have so provided. The more meaningful interpretation of the statute requires us to define person in terms of the Code. To this extent then, the person using the equipment was the lessee partnership. The question then is whether the taxpayer is charged with the partnership's use. The answer is no, not unless he is *more* than a fifty percent partner.

The Commissioner cites section 1.48–3(a)(2)(ii) of the Regulations, which provides:

> (ii) For purposes of applying subdivision (i) of this subparagraph, (*a*) property used by a partnership shall be considered as used by each partner . . . .

26 C.F.R. § 1.48–3(a)(2)(ii)(*a*) (1976). These Regulations give examples of when property may or may not be disqualified because of its continued use by the same person. 26 C.F.R. § 1.48–3(a)(3). Example (5) states that if a partnership places a machine in service and later sells that machine to a one-third partner, the machine would not be "used section 38 property" to that partner.

The Tax Court, however, in *Edward A. Moradian*, 53 T.C. 207 (1969), *nonacq.*, 1973–1 C.B. 2, found this Regulation to be invalid to the extent that it requires property used by a partnership to be considered as being used by each partner in all cases regardless of the percentage interest of the partner. The court looked to section 7701(a)(1) of the Code defining "person" both in terms of an individual and a partnership, and section 179(d)(2)(A), in turn referring to section 707(b)(1)(A), which establishes a "more than 50 percent" rule for the purpose of determining whether losses should be allowed between two partnerships or between a partnership and member partner. The court reasoned that, by incorporating the rules of section 707(b) into section 48(c), Congress obviously intended the same rules to apply with respect to the used-property investment credit. Thus the court held that for the purposes of section 48(c) a partnership is to be treated as an entity as distinguished from the individual partners, thereby giving effect to the definition of "person" contained in section 7701(a)(1) and rendering meaningful the reference to sections 179 and 707. The effect of its holding in *Moradian* was to allow an investment credit to an acquiring partner-taxpayer where the other fifty percent

partner remained the same both before and after the acquisition.

The Revenue Service, however, in Revenue Ruling 74–64, has indicated that it will continue to apply section 1.48–3(a)(2)(ii) of the Regulations, treating partnership property as being used by each partner, notwithstanding the Tax Court's decision in *Moradian, supra.* Accordingly, the Internal Revenue Service disallowed an investment credit to a taxpayer who had purchased one-half of a fifty percent partner's interest in an oil and gas lease venture that had acquired the equipment as new "section 38 property." Rev.Rul. 74–64, 1974–1 C.B. 12.

■ Thus we are faced with a sharp conflict between the position of the Service and that of the Tax Court. To resolve this conflict we look to the statutory language and the legislative history of section 48(c)(1). The investment credit was added to the Internal Revenue Code as a measure to stimulate the economy through encouraging investment in additional capital equipment. H.R.Rep.No.1447, 87th Cong., 2d Sess., 1962–3 C.B. 405. An exception was made where an asset is used by the same person who used the asset before the acquisition, because no goals are furthered by granting a tax credit. *Edward A. Moradian, supra,* 53 T.C. at 213. Because section 48(c)(1) incorporates the "more than 50 percent" rule of section 707(b) through specific reference to section 179(d)(2)(A), we think that, despite section 1.48–3(a)(2)(ii)(*a*) of the Regulations, section 48(c)(1) of the Code was intended to attribute use by a partnership to each individual partner only when the partner owns more than a fifty percent interest in the partnership. To hold otherwise would require the result that if a partner owning a very small interest in the partnership later acquired the equipment used by the partnership, he would be disallowed the investment credit even though there had been a substantial change in the ownership and use of the equipment and there had been a major capital investment by this partner. This interpretation is in keeping with the treatment accorded shareholders owning not more than fifty percent of the stock of a corporation, since by reference to section 267(b)(2) through section 179(d)(2)(A), use by a corporation is attributed to a shareholder only if he owns, directly or indirectly, more than fifty percent in value of the outstanding stock. Furthermore, treating a partnership as an entity distinct from the individual partners, unless the "more than 50 percent" rule applies, gives effect to section 7701(a)(1) which specifically defines "person" to include a partnership.

We agree with the Tax Court that

[i]n our opinion this conclusion is consistent with Congressional intent. Congress added the investment credit to our tax laws in the Revenue Act of 1962 in order to stimulate the nation's economy through investment in producers goods. Petitioner has purchased the assets of a pre-existing business, and, at least indirectly, has stimulated investment. If Dr. Blankenship should decide to continue in business as a dentist, he will have to go out and purchase new or used dental equipment to replace the equipment he sold to the petitioner. The abuse which Congress sought to prevent has not occurred. There has been a change in the use as well as a change in the ownership of assets. A change in use occurred because the Holloman-Blankenship partnership and the petitioner are separate entities. The "person" who used the property in question after the acquisition, the petitioner, is not the same or related to the "person" who used such property before such acquisition, the partnership.

Therefore, the decision of the Tax Court that the dental equipment was "used section 38 property" with respect to the taxpayer, which entitles him to an investment credit in 1971 and a carryback to 1968, is

AFFIRMED.