CARL A. KLEUSKENS AND HELEN R. KLEUSKENS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kleuskens v. Commissioner
Docket No. 10648-79.
United States Tax Court
T.C. Memo 1982-216; 1982 Tax Ct. Memo LEXIS 531; 43 T.C.M. (CCH) 1160; T.C.M. (RIA) 82216; April 22, 1982. Jimmy L. Ross, for the petitioners. Douglas R. Fortney, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge:* Respondent determined deficiencies in petitioners' income tax for the calendar years 1974 and 1975 in the amounts of $ 5,832.83 and $ 2,643.03, respectively. After various concessions made by the parties on other issues raised by petitioners' petition herein, there remains only one issue for us to decide: whether or *532 not petitioners are entitled to an investment tax credit in the year 1974, with respect to certain used tangible personal property acquired by them in that year. The case was submitted to the Court on a fully stipulated basis, pursuant to the provisions of Rule 122 [1]. The evidence accordingly consists of a stipulation of facts with certain attached exhibits, and the facts are found accordingly. Petitioners resided at Route 1, Hereford, Texas, at the time the petition herein was filed. Petitioners filed joint income tax returns for the calendar years 1974 and 1975. During the years in issue, and for some years prior thereto, petitioners had been engaged in the business of farming in Deaf Smith County, Texas. For several years prior to December 1, 1970, petitioners leased certain irrigated farm land, known as the west half of section eight (8), block *533 K-3, A B & M Survey, Deaf Smith County, Texas, from one Mrs. Frances Zoe Foster and her late husband, Hosea D. Foster, who died on March 7, 1968. Under date of December 1, 1970, petitioner Carl Kleuskens and Mrs. Foster entered into a farm lease contract with respect to the above property. Under the terms of this agreement, Mrs. Foster, as lessor and owner of the land in question, and petitioner Carl Kleuskens, as lessee, agreed that petitioner [2] would farm this property (together with certain other properties) under the crop share arrangement. Mrs. Foster, as lessor, would furnish the land and the improvements situated thereon, including irrigation wells (motors and pumps), underground pipe, and other improvements, and petitioner, as lessee, would furnish seed, fertilizer, labor and other items necessary to plant, irrigate, water, fertilize and harvest the crops. Upon harvest of such crops, Mrs. Foster, as lessor, would receive one-fourth of the cotton and soy beans, one-fifth of the sugar beets, and one-third of all milo, wheat or other row crops. In addition to other provisions of the lease, not relevant herein, petitioner, as lessee, agreed that he would irrigate as much *534 of said leased property as was reasonable and practical with water located from wells located on the property. Mrs. Foster, as lessor, agreed to furnish existing irrigation pumps, gearheads and three electric motors and was responsible for maintaining them at her own expense. Petitioner, as lessee, was required to furnish at least eight motors and agreed to maintain the motors and gearheads owned by lessor, or thereinafter installed, in good repair. Further detailed provisions with respect to the equipment passing under the lease with the property were made. Included in the incidental property covered by the farm lease were irrigation wells, underground irrigation flow pipes, and other improvements consisting of fencing, barns and a house. Although no separate rental was stated for use of the equipment and facilities, as opposed to the land itself, the lease agreement covering the sharing of crops took into consideration such assets, buildings and improvements. Under date of December 17, 1974, and while said lease was apparently still in force, petitioners purchased the above property, *535 together with all improvements, from Mrs. Foster, and continued to farm it as before.
In their income tax return for 1974, petitioners claimed an investment credit with respect to the following property, which was part of the improvements purchased from Mrs. Foster: Property
Cost
Life
Irrigation Pipe
$ 14,200.00
7 years
Irrigation Wells
48,545.00
7 years
Gas Lines
5,102.00
8 years
Total
$ 67,847.00
The above assets were "used tangible personal property" within the meaning of section 38 and section 48, Internal Revenue Code. [3]
The petitioners are not related to Mrs. Foster or her late husband, Hosea D. Foster, who died on March 7, 1968. Mr. and Mrs. Foster never elected, with respect to any new section 38 property they purchased, to treat the lessee as having acquired the property. Thus, petitioner, while the lessee of Mr. and Mrs. Foster (and later Mrs. Foster alone), never claimed any investment credit on the property or improvements thereon which petitioner leased. In his statutory notice of deficiency herein, *536 respondent disallowed the investment tax credit with respect to the above specific assets, which was claimed by petitioners as allowable with respect to "used section 38 property". The parties have stipulated that, if investment credit is allowable to petitioners by reason of their purchase of the irrigation pipe, irrigation wells and gas lines from Mrs. Foster in 1974, on the basis that such assets constitute "used section 38 property", the correct amount of said credit is $ 3,500. The above assets were not "used section 38 property" within the meaning of section 48(c)(1). OPINION The issue before the Court is whether petitioners are entitled to an investment tax credit under section 38 by reason of their acquisition of certain used tangible personal property in 1974, as part of their acquisition of certain farm lands from the prior owner, Mrs. Foster. With respect to property of this type, section 48(c) provides as follows: (c) Used section 38 property.- (1) In general.- For purposes of this subpart, the term "used section 38 property" means section 38 property acquired by purchase after December 31, 1961, which is not new section 38 property. Property shall not *537 be treated as "used section 3, property" if, after its acquisition by the taxpayer, it is used by a person who used such property before such acquisition * * * Implementing the above Code provision, section 1.48-3(a)(2)(i), Income Tax Regs., provides in relevant part as follows: (2)(i) Property shall not qualify as used section 38 property if, after its acquisition by the taxpayer, it is used by (a) a person who used such property before such acquisition… Similarly, where a lessee has been leasing property and subsequently purchases it (whether or not the lease contains an option to purchase), such property is not used section 38 property with respect to the purchaser because the property is being used by the same person who used it before its acquisition. In addition, if property owned by a lessor is sold subject to the lease, or is sold upon the termination of the lease, the property will not qualify as used section 38 property with respect to the purchaser if, after the purchase, the property is used by a person who used the property as a lessee before the purchase. The property which is in issue between the parties herein appears to fit precisely the portions of the Code *538 and regulations quoted above. Petitioner, however, seeks to avoid the classification of this property as being outside the definition of "used section 38 property" by advancing two arguments: A. That the property is not covered by the Code and regulations quoted above because no separately identifiable rental was paid for this property under petitioner's lease from Mrs. Foster, and B. That the use of the property by petitioner, as lessee, was only casual and incidental and was different from the use of the property by petitioner after he acquired the land on which this tangible personal property was located. Petitioner is in error with respect to these contentions, both as a matter of fact and as a matter of law. Contrary to petitioner's contentions, the above property, together with additional facilities such as farm buildings, fences, etc., was included in the 1970 lease from Mrs. Foster to petitioner, and, according to petitioner's own affidavit which was submitted as a joint exhibit herein, suchf facilities, improvements and equipment were taken into consideration in determining the share of the crop which Mrs. Foster, as lessor, was entitled to receive. [4] The clear *539 inference is that Mrs. Foster's share of the crop would have been less if she had not furnished, as part of the lease of the land, all the improvements located thereon, including the property at issue here. In any event, the law does not require that any separate rental for such property be stated in order to bring it within the purview of section 48(c). Petitioner's argument with respect to the use of the property is likewise insubstantial. The record does not indicate that petitioner's use of the land (together with its appurtenances and facilities) was any different in the hands of petitioner as lessee, than it was in the hands of petitioner as owner. In both cases, petitioner farmed the land, and in connection therewith, he used all the facilities, improvements, and appurtenances, as appropriate. This obviously included the use of the irrigation equipment. There is no indication in this record that the use of irrigation equipment *540 by petitioner as lessee was any less than its use by petitioner as owner of the land. As the statute and regulations quoted above make clear, there is no distinction to be made with respect to the "use" of the property by reason of petitioner's change of status from lessee to owner. The case is therefore on all fours with the case of Hutton v. Commissioner, a Memorandum Opinion of this Court, [5] where the taxpayer first leased certain property, and then bought it. No investment tax credit for "used section 38 property" was allowed. [6]
It is accordingly clear that the property at issue herein was not "used section 38 property" within the meaning of the Code, and petitioner was not entitled to any investment *541 tax credit with respect thereto when he acquired these items from Mrs. Foster in 1974. In order to give effect to concessions made by the parties on other issues herein, Decision will be entered under Rule 155.
Footnotes
*. This case was tried before Judge Cynthia Holcomb Hall who subsequently resigned from the Court. By order of the Chief Judge dated February 1, 1982, the case was reassigned to Judge Jules G. Korner III↩.
1. All rule references herein are to the Rules of Practice and Procedure of this Court, unless otherwise noted.↩
2. All references hereinafter to "petitioner" refer to petitioner Carl A. Kleuskens.↩
3. All references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
4. Petitioner's own sworn statement, coming from a party-opponent, is strong evidence against him. See Bianco v. Commissioner,T.C. Memo. 1982-186; Rule 801(d)(2)(A), Fed. Rules of Evidence.↩
5. T.C. Memo. 1976-6↩. 6. Nor would it make any difference whether there had been an intervening owner of the property, between taxpayer's use as lessee and his acquisition as owner. See Don R. Thompson, et ux. v. Commissioner,49 T.C. 230 (1967), affd. 410 F.2d 1195 (9th Cir. 1969); Sherar v. United States,413 F.2d 986 (9th Cir. 1969); Donald R. Travis v. Commissioner,T.C. Memo. 1980-251↩.