SILLER BROTHERS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4051-84.          Filed August 10, 1987.

---

*Thomas E. Smail, Jr.*, for the petitioner.

*Steven J. Mopsick* and *Robert R. Rubin*, for the respondent.

## OPINION

WILLIAMS, *Judge*:* The Commissioner determined deficiencies in petitioner's Federal income tax for its taxable years ended April 30, 1978, April 30, 1979, and April 30, 1980. The parties have settled most of the issues raised in the deficiency notice. The remaining issue for decision is whether a partner is required to recapture investment tax credit pursuant to section 47(a)(1)[1] when it acquires partnership property in a liquidating distribution and continues to use the property in the same business. The parties have agreed that if petitioner is required to recapture investment tax credit, there will be a deficiency in income tax due for its taxable year ended April 30, 1980, of $205,475. If petitioner is not required to recapture investment tax credit, the parties have agreed that there will be a deficiency in income tax due for its taxable year ended April 30, 1980, of $59,133.

---

*By order of the Chief Judge, this case was reassigned from Judge Wright to Judge Williams for disposition.

[1] All section references are the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. Petitioner, Siller Bros., Inc., had its principal place of business at Yuba City, California, at the time its petition was filed.

Petitioner and Louisiana-Pacific Corp. (Louisiana-Pacific) each held a 50-percent interest in Tri-Eagle Co. (Tri-Eagle), a partnership engaged in the business of logging. From 1975 through 1980, Tri-Eagle purchased property qualifying for the investment tax credit under section 38 (section 38 property or investment credit property). Because Tri-Eagle was a partnership, the credit passed through to petitioner and Louisiana-Pacific. Sec. 702; sec. 1.46-3(f), Income Tax Regs. Petitioner claimed $214,526 as its share of the credit on its Federal income tax returns for its taxable years ended April 30, 1975, through April 30, 1980.

By contract dated March 17, 1980, petitioner purchased Louisiana-Pacific's one-half interest in Tri-Eagle for $7,500,000. As a result of the sale, the partnership terminated pursuant to section 708(b)(1)(A) and section 708(b)(1)(B).[2] Petitioner continued to carry on the partnership's business without interruption, including the business use of the partnership's investment credit property.

Petitioner transferred Tri-Eagle's basis for the assets acquired from Louisiana-Pacific onto its books and continued to depreciate the assets using the same lives and methods used by Tri-Eagle. In addition, petitioner calcu-

---

[2]Sec. 708(b)(1) provides:

SEC. 708. CONTINUATION OF PARTNERSHIP.

  (b) TERMINATION.—

    (1) GENERAL RULE.—For purposes of subsection (a), a partnership shall be considered as terminated only if—

      (A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or

      (B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits.

As a result of the contract dated Mar. 17, 1980, Tri-Eagle was terminated under sec. 708(b)(1)(A) because only one partner remained and the business could no longer "be carried on by any of its partners in a partnership." Tri-Eagle was also terminated under sec. 708(b)(1)(B) because Louisiana-Pacific sold its 50-percent partnership interest to petitioner. We need not decide whether one subsection takes precedence over the other because each has the same effect for Federal income tax purposes. A termination under sec. 708(b)(1)(A) causes an actual liquidation of the partnership resulting in recognition of gain or loss by the partners pursuant to sec. 731 and basis adjustments pursuant to sec. 732(b). A termination under sec. 708(b)(1)(B) results in a deemed liquidation to which sec. 731 and sec. 732 apply. Sec. 1.708-1(b)(1)(iv), Income Tax Regs.; *Rodman v. Commissioner*, 542 F.2d 845, 855 n. 12 (2d Cir. 1976); affg., revg., and remanding on other issues a Memorandum Opinion of this Court.

lated the excess of the purchase price over the partnership's basis in the assets acquired from Louisiana-Pacific as $6,064,441. Petitioner recorded this amount in its books as a separate item for depreciation purposes and amortized it over 7 years. Louisiana-Pacific recaptured the investment tax credit it had previously taken on its share of the partnership's assets in 1980. See sec. 47(a)(1).

In his notice of deficiency dated November 10, 1983, respondent determined that upon termination of Tri-Eagle on March 17, 1980, the partnership's section 38 property ceased to be section 38 property in its hands. Consequently, petitioner should have recaptured the investment tax credit it had taken on its share of Tri-Eagle's section 38 property. Petitioner argues that the partners and not the partnership are the taxpayers for purposes of the investment tax credit. As a result, petitioner argues, it did not dispose of its share of the section 38 property and recapture was not required. In the alternative, petitioner argues that the transaction falls within the "mere change in the form of conducting the trade or business" exception to the recapture rule of section 47(a)(1). See sec. 47(b).

Section 38[3] allows a credit against tax for qualified investment in certain property. Section 46(a) provides rules governing qualification for, and the amount of, the credit, and section 48 defines section 38 property. If property for which a credit has been taken is "disposed of or otherwise ceases to be section 38 property" before the end of the useful life claimed for investment credit purposes, section 47(a)(1) requires the taxpayer to recapture the prior credit. Sec. 47(a)(1) provides:

SEC. 47. CERTAIN DISPOSITIONS, ETC., OF SECTION 38 PROP-
        PERTY.
    (a) GENERAL RULE.—Under regulations prescribed by the Secretary—
      (1) EARLY DISPOSITION, ETC.—If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into

---

[3]In 1980, sec. 38 provided, in relevant part:

SEC. 38. INVESTMENT IN CERTAIN DEPRECIABLE PROPERTY.
    (a) GENERAL RULE.—There shall be allowed, as a credit against the tax imposed by this chapter, the amount determined under subpart B of this part.
    (b) REGULATIONS.—The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this section and subpart B.

In the instant case, the parties have stipulated that the property in issue qualifies as sec. 38 property.

account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.

Petitioner's first contention is that it need not recapture the investment tax credit because it, as a partner, and not the partnership, is the taxpayer for investment credit purposes, and it did not dispose of the section 38 property. Petitioner argues that we should adopt an aggregate concept of partnerships for purposes of investment tax credit recapture.

Subchapter K blends entity and aggregate concepts of the partnership form. In certain areas of partnership taxation, the aggregate concept predominates and the partnership is viewed only as an aggregate of its individual owners. E.g., sec. 701, sec. 702. In other areas, the entity concept predominates and the partnership is viewed as a distinct and separate entity apart from its partners. E.g., sec. 741, sec. 742. The question of whether a partnership should be treated as an entity or an aggregate for purposes of section 47(a) is one of first impression. In the context of other investment credit provisions, however, this Court has held that a partnership is to be treated as an entity.

In *Moradian v. Commissioner*, 53 T.C. 207, 212 (1969), we held that for purposes of section 48(c)(1), which limits the availability of an investment tax credit for used section 38 property, a partnership must be treated as an entity apart from its partners. See also *Holloman v. Commissioner*, 551 F.2d 987 (5th Cir. 1977), affg. a Memorandum Opinion of this Court (holding use by partnership of section 38 property attributable to an individual partner only if that partner owns a greater than 50-percent interest in the partnership).

In *Southern v. Commissioner*, 87 T.C. 49, 54 (1986), the Court held that in determining the amount qualifying for an investment tax credit pursuant to section 46(c)(1), the entity rather than the aggregate approach should be used. We recognized that section 46(c)(1) refers to property "placed in service by the taxpayer" and that the partners, rather than the partnership, were the taxpayers who used the invest-

ment tax credit, but concluded that the entity approach was nonetheless contemplated:

The amounts computed under section 38 are distributable partnership items. While the investment credit provisions do not refer to partnerships, in the context of section 48(c)(1), relating to the purchase of used section 38 property, we have recognized that an entity rather than an aggregate approach should be used in determining whether the property was used by the same person who used the property prior to purchase. *Moradian v. Commissioner*, 53 T.C. 207, 211-212 (1969). Although the operative term used when determining the amount of investment credit is "taxpayer" and not "person" (see, e.g., sec. 46(c)(1)), it is clear that an entity rather than an aggregate approach is contemplated. As in *Moradian*, the operative term includes a partnership. Sec. 7701(a)(14). It is the partnership which places the property in service under section 46(c)(1). Therefore, the focus of the investment credit provisions is initially on the partnership as an entity, and the investment credit is a partnership item for which each partner must report a distributable share. [87 T.C. at 54. Fn. refs. omitted.]

For the reasons stated in *Southern v. Commissioner, supra* we hold that for purposes of applying the investment tax credit recapture provision, section 47(a), a partnership must be treated as an entity separate from its individual partners. Thus, because Tri-Eagle disposed of its section 38 property early, section 47(a)(1) requires petitioner to recapture its investment tax credit unless the "mere change in form" exception applies. See sec. 47(b).

Section 47(b) provides, in relevant part, that—

property shall not be treated as ceasing to be section 38 property with respect to the taxpayer by reason of a mere change in the form of conducting the trade or business so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business.

The regulations set forth four requirements for a disposition of section 38 property to constitute a mere change in the form of conducting a trade or business:

(a) The section 38 property described in subdivision (i) of this subparagraph is retained as section 38 property in the same trade or business,

(b) The transferor (or in a case where the transferor is a partnership, estate, trust, or electing small business corporation, the partner, beneficiary, or shareholder) of such section 38 property retains a substantial interest in such trade or business,

(*c*) Substantially all the assets (whether or not section 38 property) necessary to operate such trade or business are transferred to the transferee to whom such section 38 property is transferred, and

(*d*) The basis of such section 38 property in the hands of the transferee is determined in whole or in part by reference to the basis of such section 38 property in the hands of the transferor.

[Sec. 1.47-3(f)(1)(ii), Income Tax Regs.]

Respondent concedes that the first three conditions have been satisfied but argues that subsection (*d*) has not.[4] We must decide whether the basis of the section 38 property that petitioner acquired in a liquidating distribution from the Tri-Eagle partnership was determined in whole or in part by reference to the basis of the property in Tri-Eagle's hands. In other words, we must determine whether petitioner acquired a carryover basis in the section 38 property. Cf. *Long v. United States*, 652 F.2d 675, 679 (6th Cir. 1981).[5]

When partnership property is distributed in liquidation, section 732(b)[6] provides that the basis of the property in the partners' hands is determined by reference to each partner's basis in his partnership interest. The partnership's prior basis in the distributed property is not relevant. The statute gives petitioner a new basis in its assets received on liquidation of the partnership.

Petitioner argues that its basis in its partnership interest following liquidation was equal to Tri-Eagle's basis in its

---

[4]Petitioner cites *Miller v. Commissioner*, T.C. Memo. 1982-721, in which respondent did not argue that the partners had to recapture investment tax credits on the sec. 38 property they had received in a liquidating distribution. In that case, a partnership owned three farms. Each farm was operated as a separate business and the income and operating expenses were aggregated at yearend for tax purposes. On dissolution of the partnership, each partner received the farm on which he resided and the portion of the partnership's sec. 38 property used on the farm. Respondent argued, and the Court agreed, that each partner had to recapture investment tax credit only with respect to the sec. 38 property distributed to the other partners. Respondent now argues that his position was wrong, and that each partner should have recaptured investment tax credit with respect to the property he received in the liquidating distribution as well. *Miller* does not aid petitioner because the partners in *Miller* did not satisfy the "substantial interest" requirement of sec. 1.47-3(f)(1)(ii)(*b*), Income Tax Regs., and the Court did not reach the issue before us with respect to the basis of the assets received in the liquidation of the partnership.

[5]Accord *Gorton v. Commissioner*, T.C. Memo. 1985-45.

[6]Sec. 732(b) provides:

SEC. 732. BASIS OF DISTRIBUTED PROPERTY OTHER THAN MONEY.

(b) DISTRIBUTIONS IN LIQUIDATION.—The basis of property (other than money) distributed by a partnership to a partner in liquidation of the partner's interest shall be an amount equal to the adjusted basis of such partner's interest in the partnership reduced by any money distributed in the same transaction.

assets. Petitioner incorrectly determined its basis following liquidation in the assets distributed by Tri-Eagle. Petitioner determined its basis under the incorrect assumption that prior to liquidation it owned a 100-percent interest in 50 percent of the partnership's assets. As a 50-percent partner of Tri-Eagle, however, petitioner did not own half of the partnership assets outright. Rather, it owned a 50-percent interest in each of the partnership's assets. Cal. Corp. Code sec. 15025 (West 1977 & Supp. 1987). When petitioner purchased Louisiana-Pacific's 50-percent interest in Tri-Eagle for $7,500,000, the partnership terminated and petitioner acquired each partnership asset in a liquidating distribution. Although petitioner's basis in its original 50-percent interest in the partnership was not affected by its purchase of Louisiana-Pacific's interest, petitioner's partnership interest acquired from Louisiana-Pacific had a basis of $7,500,000 which exceeded Louisiana-Pacific's basis by $6,064,441. When Tri-Eagle liquidated, petitioner's basis in the distributed partnership assets should have been determined with reference both to petitioner's basis in its original partnership interest and its basis in the partnership interest acquired from Louisiana-Pacific.[7] Petitioner's basis in the section 38 property it received in a liquidating distribution from Tri-Eagle, therefore, should have been determined solely by reference to its basis in its partnership interest in Tri-Eagle, as section 732(b) mandates. Petitioner's basis in the distributed property was not determined either in whole or in part by reference to Tri-Eagle's basis in the property prior to liquidation.

Section 732(c) provides that a partner's basis in its liquidated partnership interest must be allocated among all of the partnership properties received in proportion to the partnership's basis in the properties. An argument is, therefore, possible that a partner's basis in its liquidated partnership interest is determined in part (i.e., indirectly) by

---

[7]Instead, petitioner set up $6,064,441, calculated as being the excess of purchase price over the basis of assets acquired, as a separate account in petitioner's books for depreciation purposes. Petitioner's action reflects its misunderstanding of the nature of a partner's interest in a partnership. Petitioner and Louisiana-Pacific each owned 50 percent of all of Tri-Eagle's assets. They did not each own half of the assets outright, and petitioner, therefore, did not purchase half of the assets from Louisiana-Pacific.

reference to the partnership's basis in its assets.[8] We cannot accept this argument in applying section 1.47-3(f)(1)(ii)(*d*), Income Tax Regs., however, because section 732(c) provides a method for *allocating* the partner's basis among distributed partnership properties after the amount of that basis has been determined.

In the context of the dissolution of a subchapter S corporation, courts have similarly found that the mere change in form requirement is not satisfied because the basis of the property received by the shareholders is determined with reference to the shareholder's basis in its canceled shares (sec. 334(c)) or the fair market value of the property received (sec. 334(a)). *Long v. United States*, 652 F.2d 675 (6th Cir. 1981); *Ramm v. Commissioner*, 72 T.C. 671 (1979).[9]

In *Ramm*, however, this Court questioned the validity of the carryover basis requirement of section 1.47-3(f)(1)(ii)(*d*), Income Tax Regs., noting that it may be inconsistent with Congress' intent in enacting section 47(b). 72 T.C. at 674-675 n. 5. Subsequent to our opinion in *Ramm*, the District Court for the Western District of Tennessee invalidated the regulation, concluding that it did not bear any relationship to Congress' goal in enacting section 47(a) of preventing quick turnovers of assets in an effort to obtain multiple tax credits. *Long v. United States*, an unreported case (W.D. Tenn. 1979, 44 AFTR 2d 79-5888, 79-2 USTC par. 9612); see S. Rept. 1881, 87th Cong., 2d Sess. 18 (1962), reprinted in U.S. Code Cong. & Admin. News 3304, 3320 (1962), 1962-3 C.B. 709, 723. The Sixth Circuit, however, reversed, noting that section 1.47-3(f)(1)(ii)(*d*), Income Tax Regs., is a legislative regulation and thus valid so long as it implements the congressional mandate in *some* reasonable manner. *Long v. United States*, 652 F.2d at 678; see *United States v. Correll*, 389 U.S. 299, 307 (1967). The Sixth Circuit concluded that although the carryover basis requirement did not further the statutory purpose of section 47(a), it was not in conflict with that purpose and was, therefore, valid.

---

[8]Hammer, "Effect of Partnership Transactions on Investment Tax Credit and Recapture," 2 J. Partnership Tax. 143, 152 (1985).

[9]See also *Gorton v. Commissioner*, T.C. Memo. 1985-45; *Sexton v. Commissioner*, T.C. Memo. 1981-494.

652 F.2d at 681. We agree with the Sixth Circuit whose reasoning is fully applicable to the case before us.

The liquidating distribution from Tri-Eagle thus does not meet the requirements of section 1.47-3(f)(1)(ii)(*d*), Income Tax Regs., and petitioner must recapture its prior investment tax credit on its share of Tri-Eagle's section 38 property.

To reflect the stipulation of settled issues,

*Decision will be entered under Rule 155.*