GERALD W. McDONALD AND RUTH M. McDONALD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73999. Filed December 21, 1959.

◼

*David A. Johnston, Jr., Esq.*, for the petitioners.
*Hubert E. Kelly, Esq.*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined deficiencies in income tax for the years 1954 and 1955 in the respective amounts of $218.28 and $269.45.

The question for decision is whether the amounts of $2,045.34 and $2,417.22 received in 1954 and 1955 by Gerald W. McDonald (hereinafter called petitioner) from the Firemen's Pension Fund of Columbus, Ohio, are excludible from gross income under section 104(a)(1), I.R.C. 1954.

## FINDINGS OF FACT.

Some of the facts are stipulated, are so found, and the stipulation and the attached exhibits are included by reference.

Petitioner and his wife, Ruth, reside at Columbus, Ohio. They filed joint returns for 1954 and 1955 with the director of internal revenue for the district of Columbus, Ohio.

Petitioner became a member of the Division of Fire, Department of Public Safety, Columbus, Ohio, on July 3, 1923. Effective November 1, 1948, he was suspended, relieved from duty, and honorably discharged from the Division of Fire. At that time his rank was that of captain.

On November 1, 1948, McDonald filed the following application for pension with the Board of Trustees of the Firemen's Pension Fund, Columbus, Ohio:

FIREMEN'S PENSION FUND
Columbus, Ohio                    No._____

*Application for Pension*

Columbus, Ohio, __Nov 1__  __1948__

To the Honorable Board of Trustees of the Firemen's Pension Fund:

GENTLEMEN: — I, the undersigned, having been relieved from all service in the Columbus Fire Department, do most respectfully request that my name be placed upon the Roll of Pensioners, and that I be allowed a payment monthly from the Pension Fund, according to the Rules and Regulations of the Trustees of the Firemen's Pension Fund; and I furthermore declare that the following statement is correct in every particular. This application is made under the provisions of Rule 15-Sec 1 of the Rules and Regulations of your Honorable Board.

I was first appointed July 3 – 1923 _____

I was_____years in service during my first appointment.

I was re-appointed_____

I was 25 yr – 18 da actual service years in actual service of the Fire Department.

Nature of my disability_____
                    See letter of department physician
_____

When and how contracted_____
_____

/s/   G. W. McDonald
*Applicant.*

RECORD

The records show that ___GERALD  W.  McDONALD___ was appointed a member of the Columbus Fire Department___July 3 – 1923___ and that he has been 25 yr – 18 da years in actual service as a member of said department.

/s/   W. G. Strickfaden
*Chief of Fire Dept.*

CERTIFICATE OF MEDICAL OFFICER

I hereby certify, that I have this_____day of_____, 19_____
carefully and thoroughly examined_____

and find that $\begin{cases} \text{disability} \\ \text{sickness} \end{cases}$ is not feigned or caused by dissipation, immoral
conduct or violation of the law or the rules and regulations of the Board of
Public Safety.

Attached find copy of sworn Medical Examination in detail.

_____
_____*Medical Officer.*

McDonald's application was approved by the application committee of the Firemen's Pension Fund, and on November 24, 1948, approved by the board of trustees of the fund, which granted him a pension effective November 1, 1948.

Rule 15, section 1, of the Rules and Regulations of the Firemen's Pension Fund of Columbus, Ohio, provides as follows:

Section 1. Any member of the division of Fire, who has been placed upon the pension roll, on and after January 1st, 1930, and who has served faithfully for a period of twenty five actual years may voluntarily retire by resignation, or when honorably retired by the Director of Public Safety, shall in either instance be granted and paid from said fund an annual pension of 62½% of the annual salary received by said applicant at the time of his resignation, or retirement by the Director of Public Safety. * * *

Rule 15, section 2, of the Rules and Regulations of the Firemen's Pension Fund of Columbus, Ohio, provides for pensions to any member of the Division of Fire appointed or qualified on or before July 1, 1936, who becomes so disabled as to prevent the applicant from performing his duties either from sickness, accident, or injury received, when honorably retired by the Director of Public Safety. The pension granted under such circumstances is not less than $1 or more than $75 per month. However, if at the expiration of 6 months after the retirement of the applicant he is found to be permanently disabled, the pension previously awarded by the board of trustees may be increased to 62½ per cent of the annual salary received by the applicant at the time of his retirement from active duty. Further, under subsection (e) of rule 15, section 2, of the Rules and Regulations of the Firemen's Pension Fund of Columbus, Ohio:

(e) * * * if it is manifest that the applicant for a pension is permanently and totally disabled at the time of his retirement by the Director of Public Safety, then the Board may grant him a pension of 62½% of the annual salary received by the applicant at the time of retirement.

Rule 17 of the Rules and Regulations of the Firemen's Pension Fund of Columbus, Ohio, provides as follows:

## Applications for Pensions.

All applications for pensions must be accompanied by a medical certificate signed by the Police or Fire Surgeons, which shall clearly and fully disclose the nature and extent of the sickness or disability, and whether such sickness or disability is curable, or incurable, and to what extent the applicant is incapacitated, and whether such sickness or disability has been induced wholly or in part by intemperance or immoral conduct, and whether such sickness or disability is feigned, and to what extent such sickness or disability interferes with the full performance of fire duty on the part of the applicant. The application shall also fully and completely state under what provision of rule 15 of the Rules and Regulations adopted by the Board of Trustees of the Firemen's Pension Fund, said application is made.

At the time of petitioner's retirement on November 1, 1948, he was eligible for retirement by reason of his length of service with the Division of Fire under rule 15, section 1, of the Rules and Regulations of the Firemen's Pension Fund, Columbus, Ohio. The minutes of the Board of Trustees of the Firemen's Pension Fund do not reflect under what section, or sections, of the rules and regulations of the pension fund it granted petitioner's retirement.

On or about October 8, 1934, petitioner fell over a line of hose in the performance of his duties at a fire, wrenching the muscles in his back. As a result thereof, he was certified off duty for 3 days. Petitioner received a similar injury on March 11, 1941, when he again fell over a charged line of hose in the performance of his duties at a fire. He was not absent from duty by reason of this injury.

In 1936 petitioner started wearing a back brace when he was apparently employed as a traveling salesman selling film. At the trial, he did not recall whether or not his physician advised him to wear this brace.

On April 11, 1944, petitioner received a commission from the United States Navy. At that time, he successfully passed a physical examination given him by the Navy. He was discharged from the Navy in January 1946, and at that time was reinstated as a captain in the Division of Fire. Upon reinstatement he was given a physical examination by the department surgeon on January 18, 1946, whose written report indicates that he had no defect of the back or spine.

On October 27, 1948, the department surgeon of the Division of Fire wrote the following letter to the chief of the division:

Upon examination of the above named I deem it advisable that he retire from the Columbus Fire Department on disability, due to the following causes:

1. Periodic attacks of acute myofibrositis of the low back. There has been on occasion some sciatic neuritis.

2. Acute flare ups of sinusitis.

3. Irregular periodic flare ups of chills, fever, muscular aches and pains simulating a malarial attack, but no definite diagnosis of malaria has been

made. This condition made its appearance while he was in the Military service in the South Pacific during World War II.

4. Traumatic arthritis of the lumbo-sacral junction.

Very truly,

(Signed)   John H. Richardson, M.D.
*Department Surgeon*

(This is the letter referred to in petitioner's application for pension.)

No medical testimony was introduced at the trial of this case indicating that any of the above diseases were caused by injuries received by petitioner in the line of his duty as a fireman, or the extent to which any of the four contributed to his retirement.

Thereafter, petitioner was suspended from his position of captain, Division of Fire, Department of Public Safety, and charges were brought against him by the chief for violation of rule 2, paragraph 11 (Physical Disability). The specification in the charges was that petitioner "is unable to perform the duties of his position due to physical disability." On November 3, 1948, a hearing was held in connection with the charges brought against petitioner and, pursuant to his plea of guilty to the charges, he was honorably discharged from the Division of Fire, Department of Public Safety, effective November 1, 1948. At the hearing the Director of Public Safety, after reciting the above letter from Dr. Richardson, made the following statement:

I think it is a good idea to retire on physical disability. I don't believe there is a man in the police and fire departments who could not consciensciously [*sic*] retire on physical disability. It is possible that sooner or later all pensions will be exempted from income tax, but it is a great advantage that service-connected-disability pensions be so exempted.

Petitioner was never certified off duty for any reason pertaining to his health from the time he was discharged from the Navy until he was retired from the Division of Fire.

During the years 1954 and 1955, petitioner was employed by the Farm Bureau Cooperative in Columbus, as a building manager. He obtained this employment shortly after he was retired from the Division of Fire.

In 1954 and 1955 petitioner received pension payments from the Firemen's Pension Fund of Columbus in the respective amounts of $2,045.34 and $2,417.22.

*Ultimate Findings and Conclusion.*

The pension payments received by petitioner in 1954 and 1955 were not received by him for personal injuries received by him in the line of duty as a fireman and therefore are not excludible from his gross income in these years.

OPINION.

The taxpayer's contention is that the pension payments in question are not includible in gross income because they are "amounts received under workmen's compensation acts as compensation for personal injuries or sickness" under section 104(a)(1), I.R.C. 1954. Though this is apparently the first case arising under section 104 of the 1954 Code, this section corresponds in all basic respects to section 22(b)(5) of the 1939 Code and the principles announced in cases decided under the prior section are applicable here.

The taxpayer places primary reliance on *William L. Neill*, 17 T.C. 1015; *Doogan* v. *United States*, 154 F. Supp. 703 (S.D. Ohio); and *Frye* v. *United States*, 72 F. Supp. 405 (D.D.C.); in all of which pensions received by retired policemen under various plans were held not to be includible in gross income.

The Commissioner recognizes the authority of those cases, but argues they do not govern here because of factual differences, and relies on *Elmer D. Pangburn*, 13 T.C. 169; *Joseph B. Simms*, 17 T.C. 1, affd. 196 F. 2d 238; *George E. Murphy*, 20 T.C. 746; and *Charles F. Brown*, 25 T.C. 220, where the claimed pensions were disallowed.

We agree with the Commissioner.

Petitioner's application for pension was filed at a time when he was eligible to retire after 25 years of service and it is stated in the application that it is made under rule 15, section 1—the section which pertains to beneficiaries who have "served faithfully for a period of twenty five actual years * * * when honorably retired by the Director of Public Safety." Petitioner argues that he did not "retire" under this section, but that he was discharged, not voluntarily, but because of action initiated by the chief of the fire division for violation of rule 2, paragraph 11 (Physical Disability), "in that you are unable to perform the duties of your position due to physical disability." In this connection he points to the statement on his application for pension in the blank line denominated "Nature of my disability," wherein he wrote, "See letter of department physician," and the testimony of Lieutenant O'Connor of the Fire Department who was a trustee of the pension fund in 1948 when petitioner's application was acted on, to the effect the physician's letter was taken into consideration when the pension was granted. Petitioner also singles out the statement of the Director of Safety made during the hearing on his discharge, that it "is a good idea to retire on physical disability" and "sooner or later all pensions will be exempted from income tax, but it is a great advantage that *service-connected-disability* pensions be so exempted." (Emphasis supplied.) These

things, taken together with his own testimony about wrenching his back by stumbling over a hose in 1934 and a similar occurrence in 1941, he argues, establish that his discharge was caused by a service-connected disability and that his pension was granted for that reason and not because he was eligible to retire after 25 years' service.

On this record, we can make no such finding. We think the facts are equally, or perhaps, more convincing that his severance from the Division of Fire despite the formal actions taken was on the basis of his 25 years of service in the division and the fact that he could retire on that basis. His years-of-service record was referred to in the hearing and in the application for pension as well as his disability. In the application it is stated that petitioner had 25 years 18 days of actual service. At the hearing the Director of Safety asked when petitioner had joined the department, and, on being given the date, then stated, "And you have therefore completed your twenty-five years of service?" The answer was, "Yes, sir." And, as pointed out above, the application for pension also specifically states that it was made under rule 15, section 1, which provides for retirement after 25 years of service.

The minutes of the board of trustees of the pension fund at the meeting which granted petitioner's pension contains no indication as to the section of the rules under which it was granted and, standing alone, is equivocal in this respect. True, it is attempted to fill this gap with the testimony of Lieutenant O'Connor to the effect that the letter of the department surgeon, set out above, was taken into consideration when the pension was approved. We do not think the record establishes that petitioner was retired because he was disabled any more than it proves he was retired because of his 25 years of service. His pension on either basis was in the same amount.

Further, we think petitioner must fail for another, and perhaps more fundamental, reason. In *Charles F. Brown, supra*, which dealt with a somewhat similar problem, this Court denied a retired policeman's claim and in so doing said:

Even in those cases where exemption has been allowed on the theory that the disability payments were in the nature of "amounts received * * * under workmen's compensation acts," *it has been universally recognized that the mere fact that the taxpayer was incapacitated at the time of retirement is not sufficient to bring the exemption into play.* Cf. *William L. Neill, supra.* Rather, *it must also be shown*, consistent with such theory, *that the injury or sickness which caused such disability arose out of and was incurred in the taxpayer's regular performance of his duties.* Normally, retirement pay is not exempt, whether or not the retirement is the result of disability, if such disability merely occurred during the period of employment. [Emphasis supplied.]

The evidence in this case that the disability which petitioner claims formed the basis for his retirement "arose out of and was

incurred in the taxpayer's regular performance of his duties," as required by the principle in *Charles F. Brown, supra,* is sketchy and unconvincing. Exemptions from taxation do not rest on implication, *Elmer D. Pangburn, supra,* where it also was said, "The fact that medical officers reported him [taxpayer] permanently incapacitated for active service is not determinative. The retirement pay must be received as compensation for such physical disability."

In this case we think there is little, if any, evidence connecting petitioner's claimed disability with his service as a fireman. He was discharged from duty on November 1, 1948. His own testimony is that he wrenched his back by tripping over a hose on two occasions. The first accident occurred in 1934, and he was off duty for that reason for the short period of 3 days. The second accident happened in 1941 and he lost no service on account of it. No medical records with respect to these accidents appear in evidence. Sometime in 1936, petitioner says, he began to wear a back brace, but he did not remember whether or not it was on his physician's advice. Thereafter, on April 11, 1944, he was commissioned in the United States Navy after successfully passing the required physical examination and on January 18, 1946, he was again given a physical examination preliminary to his reinstatement in the Division of Fire which indicated he had no defect of the back or spine.

Nevertheless, petitioner apparently contends that his own testimony concerning his injuries, together with the letter of October 27, 1948, from the department surgeon of the Division of Fire, prove that his disability on that date was service connected. As we see it, to be so connected, the disability must have resulted from the back wrenches. The surgeon's letter, however, in no way establishes any such service-connected disability. Four causes are named in the letter. The second and third, "sinusitis" and "chills," have no pertinence at all. The other two, "attacks of acute myofibrositis of the low back" and "traumatic arthritis of the lumbo-sacral junction," conceivably could be attributed to the back wrenches suffered in 1934 and 1941, but the letter makes no such attribution, and the Court, of its own knowledge, cannot supply the missing connection. According to the record, the surgeon who made the examination in 1948 and wrote the letter was alive at the time this case was heard and was practicing in Columbus, Ohio, and so was available as a witness. Petitioner did not call him and argues that it was up to the Commissioner to call the surgeon to rebut "the prima facie case of petitioners." (Petitioner's reply brief, p. 7.)

We do not think petitioner has made even a prima facie case. His was the burden to establish the exclusion. He has not done so—first because he has not proved that petitioner's retirement was for dis-

ability rather than length of service, and second because he has not proved that the disability which existed at the time of retirement was a service-connected disability.

We note at this point that in the cases on which petitioner relies, this latter fact was established, i.e., "permanently disabled through injury received * * * *in the line of duty*" (*Frye* v. *United States, supra*); "petitioner was retired in 1945 by reason of *disability incurred in the line of duty*, rather than because of service of the prescribed number of years" (*William L. Neill, supra*); "The pension * * * was paid * * * because of his retirement from duty because of physical *disability incurred in the line of* duty" (*Doogan* v. *United States, supra*). (Emphasis supplied.)

And we again advert to *Charles F. Brown, supra*, where we said "[I]t has been universally recognized that the mere fact that the taxpayer was incapacitated at the time of retirement is not sufficient to bring the exemption into play." At best, that is all petitioner has proved in this case. It is not enough to justify the exclusion from gross income of the pension payments received by petitioner.

*Decision will be entered for the respondent.*