THOMAS TAKE AND JANICE TAKE, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9156–83.     Filed April 24, 1984.

*Milton Moss*, for the petitioners.
*Milton J. Carter, Jr.*, and *Willie E. Armstrong, Jr.*, for the respondent.

OPINION

CANTREL, *Special Trial Judge*: This case is presently before the Court on petitioners' motion for summary judgment, filed

on August 12, 1983, pursuant to Rule 121(a),[1] and respondent's motion for summary judgment, filed on September 15, 1983, pursuant to Rule 121(a).

Respondent, in his notice of deficiency issued to petitioners on January 21, 1983, determined a deficiency in petitioners' Federal income tax for the taxable calendar year 1979 in the amount of $7,481.17 and an addition to the tax under section 6653(a)[2] in the amount of $374.06. Petitioners have abandoned all issues with the exception of the inclusion of $15,385 in their gross income.[3] The $15,385 amount was paid to Thomas Take (hereinafter petitioner) by the trust of the Anchorage (Alaska) Retirement Plan for Police Officers and Fire Fighters (hereinafter plan). The parties agree that inclusion or exclusion of this amount from gross income will be determined under section 104(a)(1).[4]

Petitioner applied for and was granted occupational disability benefits under Anchorage, Alaska Code sec. 3.85.040.[5] This ordinance provides, in pertinent part:

*3.85.040 Occupational disability.*

A. A member who, due to an occupational disability, is unable to perform his assigned duties, shall receive a monthly pension of 66⅔ [percent] of his gross monthly compensation at the time of disability. * * * The Retirement Board shall determine whether an occupational disability exists based upon medical reports and other evidence satisfactory to the Retirement Board. The Retirement Board shall in all instances recognize the below provisions; however, consideration will not be limited to these provisions:

---

[1] Unless otherwise specified, all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Unless otherwise specified, all section references are to the Internal Revenue Code of 1954 as amended.

[3] The petitioners have also submitted a claim for "costs and attorneys fees reasonably expended in this matter" in their petition. Pursuant to Rule 34(b) and Rule 231, a claim for reasonable litigation costs shall *not* be included in the petition but shall be made by motion. We have, therefore, not considered petitioners' claim for reasonable litigation costs.

[4] Petitioners do not claim that any of the amounts received by petitioner are excludable from gross income under sec. 105(d). Had petitioners advanced such an argument, we do not believe the disability payments would be excludable from gross income because of the requirement of permanent and total disability and the reduction of the exclusion amount where the taxpayer's gross income exceeds $15,000.

[5] Neither petitioners nor respondent have clarified under which subsection of this ordinance the payments at issue were made. Both parties apparently believe that all payments at issue were made pursuant to one of the provisions relating to permanent occupational disability. Therefore, for purposes of these motions, we have not considered whether the temporary occupational disability benefits would be excludable from gross income under sec. 104(a)(1).

1. Any injury received while performing official duties for the Municipality of Anchorage which renders a member incapable of performing normal assigned duties will be construed as an occupational disability. * * *

2. The cumulative effect of the constant contact with that portion of the citizenry which suffers from infectious tuberculosis, the frequent strenuous duties encountered in performing daily assigned duties as police officers and fire fighters, and of the inhalation of smoke, toxic gases, chemical fumes and other toxic vapors on the heart, lungs and respiratory system shall be construed as an injury received or disease contracted while in the performance of duty; *therefore, heart, lung and respiratory system illnesses shall be construed as occupational disabilities.* A retired member hired on or after July 1, 1977 receiving benefits under Section 3.85.030 or Section 3.85.050 shall not be eligible for occupational disability benefits under this section if heart or respiratory disability occurs after the seventh anniversary of the member's retirement.

3. * * * Temporary occupational disability benefits for non-retired members shall be made only to the extent that such benefits and other wage continuation payments attributable to the municipality equal 100 [percent] of gross monthly compensation at the time of the disability. Temporary occupational disability benefits approved by the board shall be granted for a period not to exceed 90 days. The board, upon subsequent written request of the applicant and in consideration of medical and other evidence satisfactory to the board, may extend such benefits for additional periods not to exceed 90 days.

[Emphasis added.]

In addition to providing benefits for temporary or permanent occupational disability, the plan provides retirement benefits based on age and/or years of service (Anchorage, Alaska Code sec. 3.85.030) and non-occupational disability benefits (Anchorage, Alaska Code sec. 3.85.050) as well as other death and medical benefits.

Petitioner was awarded temporary occupational disability benefits by a letter from the secretary of the retirement board of the plan dated June 11, 1979, and permanent occupational disability benefits by a letter from the secretary of the retirement board of the plan dated August 20, 1979. Neither letter explicitly stated under which provision of the Anchorage ordinance benefits were to be awarded. However, the description of benefits awarded indicates that petitioner received temporary occupational disability benefits under Anchorage, Alaska Code sec. 3.85.040(A)(3)[6] and permanent occupational

---

[6]The letter of June 11, 1979, states, in pertinent part: "At the June meeting, the Police and Fire Retirement Board reviewed your request for an occupational disability retirement. *Temporary benefits were approved effective May 17, 1979.*" (Emphasis added.)

disability benefits under Anchorage, Alaska Code sec. 3.85.040(A), subsection (1) or (2).[7]

In support of their motion for summary judgment, petitioners have submitted a memorandum of law, copies of petitioner's "Retirement Papers," and a copy of Anchorage, Alaska Code ch. 3.85, Anchorage Police and Fire Retirement Plan. Respondent submitted a memorandum of law and supporting materials with his motion for summary judgment. Petitioners also have submitted a memorandum in opposition to respondent's motion.

A decision will be rendered on a motion for summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. See Rule 121(b). The burden of proving that there is no genuine issue of material fact is on the moving party. See *Adickes v. Kress & Co.*, 398 U.S. 144, 157 (1970); *Graf v. Commissioner*, 80 T.C. 944, 946 (1983); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982). Where both parties submit motions for summary judgment, each motion must be examined to determine if the moving party has established that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. See C. Wright, A. Miller & M. Kane, 10A Federal Practice & Procedure: Civil, sec. 2720 (2d ed. 1983).[8]

### Petitioners' Motion

Petitioners contend that the payments made to petitioner by the trust of the plan are excludable from gross income as a matter of law under the language of section 104(a)(1). Section 104(a) states, in pertinent part:

(a) IN GENERAL.— * * * gross income does not include—

---

[7] The letter of Aug. 20, 1979, states, in pertinent part: "At the August meeting of the Police and Fire Retirement Board your request for a *permanent* occupational disability retirement was approved." (Emphasis added.)

[8] Summary judgment under Rule 121 is derived from rule 56, Federal Rules of Civil Procedure. Hence, in any question turning on the interpretation of Rule 121, the history of rule 56, Fed. R. Civ. P., and the authorities interpreting such rule are considered by the Tax Court. See *Hoeme v. Commissioner*, 63 T.C. 18, 21 (1974); *Shiosaki v. Commissioner*, 61 T.C. 861, 862 (1974).

> (1) amounts received under workmen's compensation acts as compensation for personal injuries or sickness;

The exclusion under section 104(a)(1) applies as well to a statute in the nature of a workmen's compensation act. *Haar v. Commissioner*, 78 T.C. 864, 867–868 (1982), affd. per curiam on the basis of the Tax Court's opinion, 709 F.2d 1206 (8th Cir. 1983); *Dyer v. Commissioner*, 71 T.C. 560, 561 (1979). A statute is in the nature of a workmen's compensation act only if it allows disability payments solely for service-related personal injury or sickness. See *Haar v. Commissioner, supra* at 868; *Dyer v. Commissioner, supra* at 562; *Robinson v. Commissioner*, 42 T.C. 403, 407–408 (1964). Here, the ordinance under which amounts were received by petitioner is not part of the State workmen's compensation act. Consequently, the ordinance must be a statute in the nature of a workmen's compensation act if the exclusion under section 104(a)(1) is to apply.

The ordinance establishing the plan under which payments were made provides that a claimant under the plan can prove the existence of an occupational disability by showing a causal relationship between the injury and performance of official duties; see Anchorage, Alaska Code sec. 3.85.040(A)(1) (par. 1); or by showing that the claimant has a heart, lung, or respiratory illness in which event the causal relationship will be presumed; see Anchorage, Alaska Code sec. 3.85.040(A)(2) (par. 2). Paragraph 2 makes no provision for the employer to rebut the presumption of causation established therein; on its face, paragraph 2 establishes an irrebuttable presumption.[9] Petitioners have presented facts and argued only the issue of whether the provisions under paragraph 2 are in the nature of a workmen's compensation statute and have cited case authority to support their position.[10] All of the cases on which petitioners rely are inapposite as they do not involve the effect of an irrebuttable presumption in a statute providing for occupational disability payments.

---

[9]Petitioners' counsel states that the presumption is not irrebuttable (transcript at 8, 22). However, he has offered no authority to support this proposition nor has our research disclosed any such authority.

[10]Petitioners, however, have not conceded that par. 2 is the only provision under which the disability payments were made.

The issue raised by petitioners' motion is one of first impression.[11] The ordinance under which payments were received purports to compensate employees for occupational disabilities. However, paragraph 2 creates an irrebuttable presumption that certain enumerated disabilities are occupationally related. Paragraph 2 does not sufficiently limit the criteria for compensability to meet the requirement that the statute allow disability payments solely for service-related personal injury or sickness.

Generally, the purpose of workmen's compensation statutes is to provide benefits to victims of work-connected injuries and to ultimately place the cost of such injuries on the consumer. 1 A. Larson, Workmen's Compensation Law, sec. 1.00 (1978). Where the statute extends to occupational disease as well as injury, the principal problem has been distinguishing diseases which are peculiar to that occupation from "ordinary diseases of life" which are not compensable. 1B A. Larson, Workmen's Compensation Law, sec. 41.33 (1980). In a few situations, because of the increased risk of a disease in a particular occupational group, the disease is given special recognition in the workmen's compensation statutes[12] and occasionally is accorded an irrebuttable presumption of occupational causation permitting the claimant simply to show that he has the disease without requiring any affirmative or defensive showing of causation.[13]

In the case of fire fighters and policemen, special recognition of their unique occupational hazards has been accorded in several State workmen's compensation statutes. Most of these

---

[11]Compensation statutes which provide an *irrebuttable* presumption of the causal relationship between the occupation and certain diseases are apparently a recent phenomenon. See 1B A. Larson, Workmen's Compensation Law, ch. 41 (1980). The full import of such statute in relation to sec. 104(a)(1) has not been determined. In one area, respondent has permitted exclusion of disability benefits, under I.R.C. sec. 104(a)(1), paid pursuant to tit. IV of the Federal Coal Mine Health and Safety Act of 1969, Pub. L. 91–173, 30 U.S.C. 801, as amended by the Black Lung Benefits Act of 1972, Pub. L. 92–303, Rev. Rul. 72–400, 1972–2 C.B. 75, 86 Stat. 150. The act, as amended, provides an irrebuttable presumption in certain instances that death or disability due to pneumoconiosis (black lung disease) is occupationally related.

[12]For example, in some States, the workmen's compensation statute defines compensable occupational diseases by the relationship between the activities performed within the occupation and the disease contracted. Idaho Code sec. 72–438 (Supp. 1983); N.C. Gen. Stat. sec. 97–53 (1979); Ohio Rev. Code Ann. sec. 4123.68 (Page 1980).

[13]For example, prior to amendment, Wisconsin had a statute providing for compensation on a finding that the employee had silicosis and that he was discharged or ceased his employment as a result of the disease (Wis. Stat. Ann. sec. 102.565 (West 1973)). No showing of causation was required.

statutes establish a presumption that respiratory and heart diseases are occupationally related. In no instance, under State workmen's compensation statutes, has this presumption been considered irrebuttable although the degree of proof required to rebut the presumption differs. 1B A. Larson, Workmen's Compensation Law, sec. 41.72 (1980).

Here, paragraph 2 establishes an irrebuttable presumption that heart, lung, and respiratory illnesses are occupationally related. Although State workmen's compensation statutes recognize the increased risk of these diseases in the occupational group of which petitioner is a member, this risk has not been considered sufficiently distinguished from the risk of such disease in the population as a whole to justify an irrebuttable presumption of occupational causation. Consequently, we hold that for purposes of section 104(a)(1), paragraph 2 is not a statute in the nature of a workmen's compensation act as it does not provide compensation only for occupational injury or sickness.[14] As paragraph 2 is not a statute in the nature of a workmen's compensation act and petitioners have not made a showing that payments to petitioner were made pursuant to paragraph 1, we must and do deny petitioners' motion for summary judgment.[15]

### Respondent's Motion

Respondent contends that he has a made the requisite showing that the statute under which petitioner received payments was not in the nature of a workmen's compensation

---

[14]This opinion does not purport to preclude the possibility that an irrebuttable presumption establishing causation under a compensation statute will qualify under sec. 104(a)(1). However, qualification under sec. 104(a)(1) requires that there be a more definitive relationship between the occupation and the injury or sickness than under par. 2.

[15]In addition, petitioners have not met the second requirement for exclusion under sec. 104(a)(1). Under this requirement, the payments made must be received for occupational injury or sickness, and the mere fact that the recipient of such payments is disabled at the time of retirement is not determinative. See McDonald v. Commissioner, 33 T.C. 540 (1959); Brown v. Commissioner, 25 T.C. 220 (1955); Neill v. Commissioner, 17 T.C. 1015 (1951).

The situation where the statute under which payments are received provides an irrebuttable presumption of causation presents unique problems in meeting this second requirement. Assuming that the statute itself qualifies as a workmen's compensation act or a statute in the nature of a workmen's compensation act, the appropriate determination under the second requirement enunciated in McDonald, Brown, and Neill will be whether the person receiving such payments is actually afflicted with the injury or sickness for which payments are being received under the applicable statute.

act and that petitioner did not receive payments for occupational injury or sickness. We disagree.

As previously discussed, paragraph 2 is not a statute in the nature of a workmen's compensation act. However, this does not end our inquiry for purposes of respondent's motion. The ordinance at issue provides that disability payments can be made under paragraph 1 or paragraph 2. Paragraph 1 requires that the occupational disability be received while performing official duties, and it is a statute in the nature of a workmen's compensation act. *Haar v. Commissioner, supra* at 868; *Dyer v. Commissioner, supra* at 562; *Robinson v. Commissioner, supra* at 407–408. Paragraph 1 does not exclude an illness listed under paragraph 2. Therefore, it is possible for an employee who has a heart, lung, or respiratory illness to establish occupational causation as required under paragraph 1.

Respondent has not made the requisite showing that petitioner received disability payments pursuant to paragraph 2 rather than paragraph 1. The materials respondent has submitted in support of his motion and other acceptable materials indicate only that petitioner was granted permanent disability benefits and that the physicians examining petitioner did not state that petitioner's illness was occupationally related. Respondent did not submit minutes of the plan board meeting in which benefits were awarded to petitioner nor has he presented affidavits or testimony which would indicate whether a determination of causation was made and whether petitioner received benefits under paragraph 1 or paragraph 2. These are genuine issues of material fact for which a determination must be made before a judgment can be rendered as a matter of law. Therefore, we must and do deny respondent's motion.

In accord with our views expressed herein,

*An appropriate order will be issued.*