THOMAS TAKE and JANICE TAKE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; THOMAS TAKE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Take v. Commissioner
Docket Nos. 9156-83, 11377-84.
United States Tax Court
T.C. Memo 1985-388; 1985 Tax Ct. Memo LEXIS 241; 50 T.C.M. (CCH) 600; T.C.M. (RIA) 85388; August 5, 1985. Dan E. Dennis and Milton L. Moss, for the petitioners. Milton J. Carter, Jr., and Jerry Leonard, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $7,481.17 in petitioners' Federal income taxes for 1979 and an addition to tax of $374.06 under section 6653(a) [1] for that year (docket No. 9156-83) and a deficiency of $8,194 in petitioners' Federal income taxes for 1980 and an addition to tax of $410 under section 6653(a) for that year (docket No. 11377-84). *242 The issue to be decided is whether retirement benefits received by Thomas Take (petitioner) may be excluded from taxable income under section 104(a)(1). FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation is incorporated herein by this reference. Petitioners were husband and wife and residents of Alaska at the time they filed their petitions in these consolidated cases. They filed joint Federal individual income tax returns for 1979 and 1980. For approximately 10 years prior to 1979, petitioner was employed as a fire fighter with the Municipality of Anchorage, Alaska. Prior to that time he was a volunteer fire fighter in and near Anchorage. During the time that he was a fire fighter, petitioner was involved in fighting thousands of fires. On one occasion he was on a fire line 72 hours. Twice he was overcome by smoke or toxic fumes. Petitioner was promoted through the ranks to battalion chief and retired with the rank of captain. In approximately 1977, petitioner participated in a paramedic *243 demonstration. During the demonstration, it was discovered that petitioner had an irregular heartbeat. Petitioner sought medical advice and was under a doctor's care for approximately 2 years. Eventually the doctor advised petitioner that he should change his profession. The doctor recommended installation of a pacemaker. On May 29, 1979, petitioner's physician wrote a letter to the Chief of the Anchorage Fire Department recommending medical retirement for petitioner. The Municipality of Anchorage enacted a Police and Fire Retirement Plan. The plan provided benefits in the event of occupational disability as follows: 3.85.040Occupational disability.
A. A member who, due to an occupational disability, is unable to perform his assigned duties, shall receive a monthly pension of 66-2/3% of his gross monthly compensation at the time of disability. This pension shall continue for life or until such time as the member so disabled is capable of resuming duties with the Anchorage Police Department or Anchorage Fire Department or any police or fire department. The Retirement Board shall determine whether an occupational disability exists based upon medical reports and *244 other evidence satisfactory to the Retirement Board.The Retirement Bord shall in all instances recognize the below provisions; however, consideration will not be limited to these provisions: 1. Any injury received while performing official duties for the Municipality of Anchorage which renders a member incapable of performing normal assigned duties will be construed as an occupational disability. For purposes of determining occupational disability and death benefits, "official duties" within the context of this paragraph shall be construed to extend to injuries and deaths of personnel which occur within the course of and as a direct result of actual training, participation in which is subject to the prior approval and direction of the Municipality of Anchorage either by labor agreement or as authorized by the municipal administration. 2. The cumulative effect of the constant contact with that portion of the citizenry which suffers from infectious tuberculosis, the frequent strenuous duties encountered in performing daily assigned duties as police officers and fire fighters, and of the inhalation of smoke, toxic gases, chemical fumes and other toxic vapors on the heart, lungs *245 and respiratory system shall be construed as an injury received or disease contracted while in the performance of duty; therefore, heart, lung and respiratory system illnesses shall be construed as occupational disabilities. A retired member hired on or after July 1, 1977 receiving benefits under Section 3.85.030 or Section 3.85.050 shall not be eligible for occupational disability benefits under this section if heart or respiratory disability occurs after the seventh anniversary of the member's retirement. On June 11, 1979, the City of Anchorage approved temporary occupational disability benefits for petitioner. Petitioner was directed to be examined by a retirement board physician and was subsequently examined by Dr. David W. Sonneborn. Dr. Sonneborn reported that petitioner's heart condition prevented him "from performing the duties of a fire fighter in light of his fatigue, and especially, in light of the fact that he has been dizzy when he is on the ladder." The report further indicated that petitioner should not perform as a fire fighter without either taking medication or having a permanent pacemaker in place. The only reference by Dr. Sonneborn to the possible cause of *246 petitioner's condition was as follows: "The underlying etiology of this marked slowing of his heart rate is not clear, but may just represent a ideopathic degeneration of the conducting system of the heart without any implied disease of the heart muscle itself." The Anchorage Fire Department had a policy against allowing firemen to perform while on medication or with a pacemaker. On August 20, 1979, petitioner was informed by the Municipality of Anchorage that his permanent disability retirement benefits had been approved. Petitioner received retirement benefits of $15,385.04 during 1979 and $24,669 in 1980. None of the payments for either year were reported by petitioners as income on their returns for 1979 or 1980. In the statutory notices of deficiency, respondent determined that petitioner's retirement benefits were includable in gross income. Respondent also determined that during 1979 petitioners had other items of unreported income, which have now been conceded by petitioners. OPINION In Take v. Commissioner,82 T.C. 630 (1984), we denied motions for summary judgment by each of the parties in which they sought determinations of whether petitioner's *247 retirement benefits were "amounts received under workmen's compensation acts as compensation for personal injuries or sickness" and thus excludable from gross income. Sec. 104(a)(1). We discussed the two provisions of the Anchorage Retirement Plan for Police Officers and Fire Fighters under which occupational disability benefits might be paid, to wit, paragraph 1, dealing with injuries received by a fireman while performing offficial duties, and paragraph 2, providing for a presumption that heart, lung and respiratory system illnesses are occupational disabilities. We concluded that the second paragraph was not a statute in the nature of a workmen's compensation act because it did not provide compensation only for occupational injury or illness. (82 T.C. at 636.) Petitioners' motion for summary judgment was denied. Respondent's motion for summary judgment was also denied, however, because paragraph 1 is in the nature of a workmen's compensation act, and respondent had not made the requisite showing that petitioner received disability payments pursuant to paragraph 2 rather than paragraph 1. Trial was thus necessary for presentation of facts "which would indicate whether *248 a determination of causation was made and whether petitioner received benefits under paragraph 1 or paragraph 2." (82 T.C. at 637.) Although docket No. 11377-84 was filed subsequent to our opinion in Take v. Commissioner,supra, because the issue is the same in both cases and they have now been consolidated, our holdings in our prior opinion are equally applicable to the later year. Petitioner has the burden of proving that he is entitled to exclude his retirement benefits from income under section 104(a)(1). Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Under our holding in Take v. Commissioner,supra, he must prove that he received these retirement benefits under paragraph 1 and not under paragraph 2 of the Anchorage plan. No such evidence has been produced, and we cannot determine from the record that the municipality made a conscious determination to pay benefits under paragraph 1 rather than paragraph 2. Nothing in petitioner's testimony or in the exhibits dealing with the doctors' reports or the municipality's actions makes it more likely that petitioner *249 was retired under one paragraph of the ordinance rather than another. Petitioner has, therefore, failed to satisfy his burden of proof. [2]
Petitioners also bear the burden of proving that respondent's determinations of additions to tax for negligence are erroneous. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). They presented no specific evidence in this regard. With respect to 1979, we have no information concerning the unreported items of income that petitioners have now conceded. Thus the additions to tax will be sustained for that year. With respect to 1980, the deficiency resulted entirely from determining that petitioners could not exclude the retirement benefits *250 from income and from a consequential adjustment of deductible medical expenses. We said in Take v. Commissioner,supra, that the question of whether benefits paid under a provision such as paragraph 2 of the Anchorage plan qualified for exclusion under section 104(a)(1) was one of first impression. (82 T.C. at 635.) As we there held, the statute creates an irrebuttable presumption that heart disease is an "occupational disability." From the evidence, we conclude that petitioner could reasonably have believed that the benefits were excludable. Under the circumstances, we do not sustain the addition to tax for negligence as to 1980. Decision will be entered for the respondent in docket No. 9156-83 and for the respondent as to the deficiency only in docket No. 11377-84.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. Petitioner originally sought a continuance of trial for purposes of presenting expert medical testimony that his heart condition was causally related to his employment as a fire fighter. Such testimony, however, would not have established the grounds upon which the municipality acted in awarding retirement benefits to petitioner. At trial petitioners decided to attempt to establish a causal connection by the written statements of the examining doctors and petitioner's testimony.↩