CHARLES BAXTER SOUTHERN AND DOROTHY I. SOUTHERN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15548-84.          Filed July 3, 1986.

*William J. Falk,* for the petitioners.
*Ronald J. Long,* for the respondent.

OPINION

HAMBLEN, *Judge*: This case is before the Court on petitioners' motion for summary judgement filed on April 15, 1985, pursuant to Rule 121,[1] and respondent's motion for partial summary judgment, filed on April 23, 1985, pursuant to Rule 121. In their respective motions, each party claims that summary disposition is appropriate on the issue of the efficacy of a Form 872-A, Special Consent to Extend the Time to Assess Tax.

Respondent issued a notice of deficiency to petitioners on February 23, 1984. In this notice, respondent determined a deficiency in petitioners' joint Federal income tax for the taxable year ending December 31, 1978, in the amount of $101,883. The deficiency was attributable to an increase in the tax pursuant to section 47, relating to the disposition or cessation of use of property for which a credit under section 38 was allowed. This adjustment pertained to petitioner Charles Baxter Southern's interest in Memphis Barge Co., a partnership. Petitioners' joint Federal income tax return for 1978 was filed or deemed filed on April 15, 1979.

Petitioners resided in Caruthersville, Missouri, when they filed their petition in this case. In their original petition filed on May 25, 1984, petitioners claimed that respondent erred with respect to the substantive basis for imposition of an increase in the tax under section 47. In their amended petition filed on May 27, 1985, petitioners also claimed that the notice of deficiency was not timely pursuant to sections 6213(a) and 6501. Respondent filed answers to both petitions. In his answer to the amended petition, respondent made affirmative allegations to which petitioners filed a reply. The case was at issue on April 8, 1985, when petitioners' reply was filed. Rule 38.

The parties agree that petitioners executed two extensions of time to assess the tax pursuant to section 6501(c)(4). The second extension, a Form 872-A, Special

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue.

Although characterized as a motion for judgment on the pleadings pursuant to Rule 120, we have considered matters outside of the pleadings. Consequently, petitioners' motion will be disposed of as a motion for summary judgment pursuant to Rule 121. Rule 120(b).

Consent to Extend the Time to Assess Tax, provided, in part:

> The amount of any deficiency assessment is to be limited to that resulting from *any adjustment to: (a) the taxpayer's distributive share of any item of income, gain, loss, deduction, or credit of, or distribution from Memphis Barge Co.*; (b) the tax basis of the taxpayer's interest in the aforementioned partnership or organization treated by the taxpayers as a partnership; and (c) any gain or loss (or the character or timing thereof) realized upon the sale or exchange, abandonment, or other disposition of taxpayer's interest in such partnership or organization treated by the taxpayers as a partnership; including any consequential changes to other items based on such adjustment. [Emphasis added].

The language in petitioners' consent is based on the language set forth in the Internal Revenue Service Manual, I.R.M. sec. 4541.72(4)(d)3. Respondent prepared the consent language. The Form 872-A was executed by both parties in August of 1982.

On July 22, 1982, petitioners were informed by letter that their examination for the taxable year ending December 31, 1978, had been completed and that they had 30 days in which to contact the Internal Revenue Service to request a conference with the Office of the Regional Director of Appeals. Enclosed with the letter was a copy of Form 886-A, Explanation of Items. The two items shown as unagreed adjustments on this form were an increase in taxable income attributable to Memphis Barge Co. in the amount of $1,289,998 and "Investment Tax Credit Recapture" in the amount of $101,883.

Petitioners submitted a formal protest with respect to respondent's examination results on October 29, 1982. The exceptions stated in the protest related to the increase in taxable income attributable to Memphis Barge Co. and "the proposed recapture of investment tax credit in the amount of $101,883 for the taxable year 1978." Between the date petitioners' protest was submitted and the date of the issuance of the notice of deficiency, petitioners' representatives attended conferences with one of respondent's appeals officers in which the investment credit issue was discussed.

A decision will be rendered on a motion for summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b). The burden of proving that there is no genuine issue of material fact is on the moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157 (1970);[2] *Graf v. Commissioner*, 80 T.C. 944, 946 (1983); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982). The opposing party is to be afforded the benefit of all reasonable doubt, and any inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion for summary judgment. *Espinoza v. Commissioner, supra* at 416. Where both parties submit motions for summary judgment, each motion must be examined to determine if the moving party has established that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. *Take v. Commissioner*, 82 T.C. 630, 633 (1984).

Here, petitioners maintain that the items mentioned in the Form 872-A, Special Consent to Extend the Time to Assess Tax, do not include an increase in tax pursuant to section 47. Consequently, they argue that the notice of deficiency issued on February 23, 1984, in which the sole unagreed change was an increase in tax pursuant to section 47, was not timely. Respondent maintains that the language of the consent clearly and unambiguously encompasses an increase in tax pursuant to section 47. In the alternative, respondent maintains that if the language of the consent does not encompass an increase in tax pursuant to section 47, the parties' actual intent to extend the statute of limitations for the item should be given effect in light of a latent ambiguity in the language and, in any event, claims that petitioners are estopped from denying the efficacy of the consent. Consequently, respondent argues that the notice of deficiency was timely.

The threshold question here is whether the language of the consent is broad enough to encompass an increase in tax pursuant to section 47. The consent language does include a deficiency assessment resulting from an adjust-

---

[2]Summary judgment under Rule 121 is derived from rule 56, Fed. R. Civ. P. Hence in any question turning on the interpretation of Rule 121, the history of rule 56, Fed. R. Civ. P., and the authorities interpreting such rule are considered by the Tax Court. See *Hoeme v. Commissioner*, 63 T.C. 18, 21 (1974); *Shiosaki v. Commissioner*, 61 T.C. 861, 862 (1974).

ment to petitioners' distributive share of any item of credit of Memphis Barge Co. Petitioners argue that the investment credit is not a distributive partnership item and therefore cannot come within the language of the consent. Petitioners also argue that an adjustment does not include an increase in tax pursuant to section 47. For the reasons discussed below, we cannot agree with petitioners' contentions.

The language of the consent and the language of I.R.M. sec. 4541.72(4)(d)3 follow the language of section 702(a) which provides, in pertinent part:

SEC. 702(a). GENERAL RULE.—In determining his income tax, each partner shall take into account separately his distributive share of the partnership's—

\* \* \* \* \* \* \*

(7) other items of income, gain, loss, deduction, or credit, to the extent provided by regulations prescribed by the Secretary, * * *

Section 702(a)(7), formerly section 702(a)(8), was intended to be a "catch-all" provision which would permit the Secretary to prescribe regulations which would require each partner to separately account for items of income, gain, loss, deduction, or credit not otherwise enumerated, the character of which would affect the computation of the partner's personal income tax. S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 377 (1954); H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. A222 (1954).

The Secretary has prescribed regulations pursuant to his authority granted in section 702(a)(7). Sec. 1.702-1(a)(8), Income Tax Regs. These regulations do not specifically enumerate the investment credit authorized by section 38. Sec. 1.702-1(a)(8)(i), Income Tax Regs. The regulations, however, do provide that, in addition to the enumerated items, the following shall be separately stated under section 702(a)(7):

his distributive share of any partnership item which if separately taken into account by any partner would result in an income tax liability for that partner different from that which would result if that partner did not take the item into account separately. * * * [Sec. 1.702-1(a)(8)(ii), Income Tax Regs.]

The language of the regulation and the corresponding legislative history relating to section 702(a)(7) does encompass an investment credit under section 38 when a partnership acquires qualified property.[3] This interpretation is consistent with the legislative history of section 702(a)(7) which defines the purpose of this statutory provision as a "catch-all" for partnership items not otherwise enumerated.

The amounts computed under section 38 are distributable partnership items. While the investment credit provisions do not refer to partnerships, in the context of section 48(c)(1), relating to the purchase of used section 38 property, we have recognized that an entity rather than an aggregate approach should be used in determining whether the property was used by the same person who used the property prior to purchase. *Moradian v. Commissioner*, 53 T.C. 207, 211-212 (1969).[4] Although the operative term used when determining the amount of investment credit is "taxpayer" and not "person" (see, e.g., sec. 46(c)(1)), it is clear that an entity rather than an aggregate approach is contemplated. As in *Moradian*, the operative term includes a partnership. Sec. 7701(a)(14).[5] It is the partnership which places the property in service under section 46(c)(1). Therefore, the focus of the investment credit provisions is initially on the partnership as an entity, and the investment credit is a partnership item for which each partner must report a distributable share.[6]

---

[3]Although not specifically enumerated in the regulations, it is clear that the Secretary interprets the language of sec. 1.702-1(a)(8)(ii), Income Tax Regs., as including this item. The 1978 Form 1065, U.S. Partnership Return of Income, Schedule K, Partners' Shares of Income, Credits, Deductions, Etc., Line 19, provides for a computation of investment credit. The corresponding Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., reflects the investment credit property on Line 19. See also 1 A. Willis, J. Pennell & P. Postlewaite, Partnership Taxation, sec. 71.08, at 71-12 (3d ed. 1981); 1 W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, sec. 9.03[2], at 9-15 (1977).

The investment credit provisions enacted by the Revenue Act of 1962, Pub. L. 87-834, 76 Stat. 960, postdate sec. 702 enacted by Pub. L. 591 (1954).

[4]See also *Kipperman v. Commissioner*, T.C. Memo. 1977-32, affd. 622 F.2d 431 (9th Cir. 1980); *Holloman v. Commissioner*, T.C. Memo. 1975-309, affd. 551 F.2d 987 (5th Cir. 1977).

[5]Sec. 7701(a)(14) provides that a "taxpayer" is any person subject to any internal revenue tax. Sec. 701 specifically exempts a partnership from income tax liability but does not exempt a partnership from other taxes imposed by the Internal Revenue Code. Thus, a partnership is a taxpayer for purposes of sec. 7701(a)(14). See 1 A. Willis, J. Pennell & P. Postlewaite, Partnership Taxation, sec. 72.01, at 72-3 (3d ed. 1981).

[6]Our analysis is consistent with sec. 1.46-3(f), Income Tax Regs., which refers to "partnership section 38 property."

The investment credit authorized by section 38 must be "separately taken into account." The partnership, itself, is not subject to the income tax. Sec. 701. Without a separate statement of this item there would be no income tax effect for the partners. Consequently, failure to reflect this partnerhsip item separately would result in a different income tax liability for the partners.

The language of the consent is identical, in part, to the language of section 702(a)(7). Having determined that the language of section 702(a)(7) is applicable to the investment credit under section 38, we necessarily find that the language of the consent also encompasses the investment credit.

The language of section 702(a)(7) does not encompass a recomputation of the investment credit under section 47. However, the consent adds the word "adjustment" to the language of section 702(a)(7).[7] "Adjustment" is not a defined term in the Internal Revenue Code. In common usage, "adjustment" is defined, in part, as an "increase or decrease." Webster's Third New International Dictionary (1971). A "recapture" recomputation of the investment credit pursuant to section 47 is clearly a decrease in or adjustment to the credit. In fact, the committee reports to section 47, as originally enacted, refer to this recomputation as a "special adjustment." S. Rept. 1881, 87th Cong. 2d Sess. (1962), 1962-3 C.B. 703, 724; Conf. Rept. 2518, 87th Cong. 2d Sess. (1962), 1962-3 C.B. 402, 417. The consent contains no limitation as to the year for which the credit being adjusted was claimed. Consequently, any adjustment to petitioners' distributable share of partnership credits reflected on petitioners' 1978 Federal income tax return, irrespective of the year in which the credit was originally claimed, would be encompassed by the language of the consent.

It is clear from this record that there is no genuine issue of material fact as to the efficacy of the consent. Both parties were aware that an increase in tax pursuant to section 47 relating to Memphis Barge Co. was an issue at

---

[7]The Secretary required partnership reporting of recapture amounts on the 1978 Form 1065, U.S. Partnership Return, Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., Line 20.

the administrative level and executed a consent which validly extended the statute of limitations for this item. Having made this determination, we decline to consider respondent's alternative arguments.

In conclusion, we note that petitioners' contention is inconsistent with the concept of Subchapter K of the Internal Revenue Code that the partnership is not a taxable entity for Federal income tax purposes, and partners bear the benefits and burden of income, allowances, and credits unless otherwise specifically provided. Petitioners' argument convolutes the purpose of the income tax partnership provisions which generally pass to the partners their respective distributive shares of income, gain, loss, deductions, and credits attributable to the partnership. Adjustment by respondent of any such partnership item consequently must require a correlative "adjustment" of a partner's distributive share of that item. Petitioners' contention would cunningly alter that concept and, consequently, must be rejected.

To reflect the foregoing,

*An appropriate order will be issued.*