T.C. Memo. 1997-568

UNITED STATES TAX COURT

JAMES BROOKS AND BARBARA BROOKS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JOHN J. McMAHON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 20859-95, 20860-95.      Filed December 23, 1997.

<u>Armondo O. Monaco II</u>, for petitioners.

<u>Bradford A. Johnson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, <u>Special Trial Judge</u>:  These consolidated cases were
heard pursuant to section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years at issue, and
all Rule references are to the Tax Court Rules of Practice and
(continued...)

Respondent determined a deficiency in petitioners James and Barbara Brooks' 1993 Federal income tax in the amount of $5,214. Respondent determined a deficiency in petitioner John J. McMahon's 1992 Federal income tax in the amount of $5,115.

After a concession by petitioner John J. McMahon that he received in 1992 unreported interest income of $52, the sole issue for decision in these consolidated cases is whether petitioners may exclude from gross income disability-pension payments received from the City of Cranston, Rhode Island (City).

All of the facts have been stipulated and are so found. The stipulation of facts and exhibits received into evidence are incorporated herein by reference. Petitioners James Brooks (Brooks) and Barbara Brooks resided in Cranston, Rhode Island, and petitioner John J. McMahon (McMahon) resided in Jamestown, Rhode Island, at the time they filed their respective petitions.

### FINDINGS OF FACT

On July 7, 1972, Brooks and later, on February 11, 1974, McMahon became uniformed police officers with the City. Brooks was also a member of the International Brotherhood of Police Officers, Local 301 (Union) from 1972 through 1993.

Brooks and McMahon (petitioners) both retired on account of work-related injury or sickness. At the time of his retirement

---

[1](...continued)
Procedure.

in 1993, Brooks had attained the rank of sergeant.  McMahon retired in 1990 having attained the rank of captain.

Petitioners were eligible for retirement under the City disability pension plan (plan).  Under the plan employees were paid at the rate of 50 percent of their salary if the employee was below the age of 55.  Pursuant to State law, however, the City was required to settle police employment disputes by binding arbitration.  In 1989 the City entered into a collective bargaining agreement (agreement) with the Union to provide increased benefits to police officers.

In accordance with the provisions of the agreement, petitioners received annual disability pension payments equal to 60 percent of their annual salary at the time of their retirement.

Brooks for the year 1993 and McMahon for the year 1992 did not report on their Federal income tax returns any of the disability-pension payments they received from the City.

OPINION

Respondent contends that petitioners may not exclude from gross income amounts they received as disability payments because the City ordinance implementing the plan is neither a workers' compensation act nor in the nature of a workers' compensation act as required by statute.  The ordinance does not meet statutory requirements, according to respondent, because the wording of the ordinance does not specifically limit benefits to those who are

disabled due to work-related injury or sickness. If petitioners disability payments were received not under the ordinance but rather pursuant to the agreement between the City and the Union, respondent asserts that the agreement is not a "statute" in the nature of a workmen's compensation act.

In their brief,[2] petitioners make no argument that Cranston City Code section 24-24, providing for disability payments to uniformed members of the police department, is by itself a workers' compensation act[3] or in the nature of a workers' compensation act. They instead argue: (a) Petitioners' disability payments were received pursuant to the collective bargaining agreement between the City and the Union; (b) the agreement is incorporated by reference into the City Code, and is therefore a "statute" in the nature of a workers' compensation act.

Exemption Under Section 104(a)(1)

Every item of a person's gross income is subject to Federal income tax unless there is a statute or some rule of law that exempts the person or the item from gross income. HCSC-Laundry

---

[2]The parties were ordered to file simultaneous briefs and reply briefs. No reply brief was filed on behalf of petitioners.

[3]The Rhode Island Workers' Compensation Act is found at R.I. Gen. Laws secs. 28-29-1 through 28-29-30. The members of "regularly organized fire and police departments of any town or city" are excluded from the definition of "employee" for purposes of workers' compensation benefits. R.I. Gen. Laws sec. 28-29-2(4); Vector Health Sys. v. Revens, 643 A.2d 795 (R.I. 1994).

v. United States, 450 U.S. 1, 5 (1981).  An exclusion from gross income can be found at section 104(a)(1) for "amounts received under workmen's compensation acts as compensation for personal injuries or sickness".  Section 1.104-1(b), Income Tax Regs. interprets section 104(a)(1) to exempt amounts received under a workmen's compensation act, "or under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment."  This exclusion has been strictly construed to conform with the general rule that all income is taxable unless it is specifically excluded.  See Kane v. United States, 43 F.3d 1446, 1449, 1451 (Fed. Cir. 1994);  Take v. Commissioner, 804 F.2d 553, 558 (9th Cir. 1986), affg. 82 T.C. 630 (1984).  "A statute will not be considered akin to a workers' compensation act if it allows for disability payments for any reason other than on-the-job injuries."  Haar v. Commissioner, 78 T.C. 864, 868 (1982), affd. 709 F.2d 1206 (8th Cir. 1983); accord Take v. Commissioner, supra; Clausse v. Commissioner, T.C. Memo. 1995-198.

The pertinent language of City Code section 24-24 provides:

> Whenever an officer or member of the permanent police department who has not attained fifty-five years of age shall become unfit to perform active duty by reason of physical infirmity or other causes, such officer or member upon the recommendation in writing of the mayor, may in the discretion of the city council by a majority vote of the city council, be retired from active service and placed on the pension list, and when so retired he shall be paid annually from the police

> pension fund in equal monthly payments until his fifty-fifth birthday a sum equal to one-half of his annual salary as defined in subsection (c) of section 24-23.
>
> Upon attaining fifty-five years of age, such officer or member so retired shall be paid annually for the remainder of his life in equal monthly installments, a sum equal to fifty-five percent of his annual salary.

By not arguing otherwise, petitioners tacitly admit that the City Code provision, without more, is not in the nature of a workers' compensation act. And we further find that since the language of the City Code disability provision allows disability payments to police officers for other than on-the-job injuries, it cannot be found to be a statute in the nature of a workmen's compensation act.

### The Agreement Between the City and the Union

Petitioners argue that they were receiving their disability payments pursuant to the collective bargaining agreement rather than the City Code. As evidence of this, they point to receiving a pension based upon 60 percent of their salary at retirement while the City Code provides for a maximum 55 percent payment, depending upon the age of the recipient. Indeed, the pertinent provision of the agreement does provide for police pension fund payments at a rate higher than that of the City Code:

### 24.2 Disability Pension:    Job Related

> Whenever an officer or member of the permanent police department shall become unfit to perform active duty by reason of job related physical and/or psychological infirmity, such officer or member upon the recommendation in writing of the Mayor, may in the discretion of the city council, by a majority vote of the city council, be retired from active service and

placed on the pension list, and when so retired he shall be paid annually from the police pension fund in equal monthly payments a sum equal to sixty percent of his annual salary as defined in subsection (c) of Section 24-23.

Since petitioners received disability payments under the collective bargaining agreement and the agreement specifically applies only to job-related injuries, they argue that the agreement is a "statute" in the nature of a workmen's compensation act. Citing Rev. Rul. 81-47, 1981-1 C.B. 55, petitioners argue that collective bargaining agreements are mandated by a Rhode Island State law that requires enactment by the City Council, and that the agreement under which they received their payments is incorporated by reference into the City Code.

Rev. Rul. 81-47

The revenue ruling involved a county police officer injured in the line of duty. He did not retire but continued to receive full pay while incapacitated in accord with the provisions of a collective bargaining agreement between his union and the county. State statute provided that all collective bargaining agreements entered into by the county had to be adopted and approved by "legislative acts" of the county council and incorporated by reference into the county code. Adoption by the council had the effect of enacting provisions of the collective bargaining agreement into law. The collective bargaining agreement at issue in the ruling was duly incorporated into the county code in

- 8 -

accordance with State statutory requirements.  The ruling found that the officer received disability payments under a statute in the nature of a workers' compensation act.

Where administrative rules or regulations have "the force and effect of law" they will be found to be the equivalent of a statute for purposes of section 1.104-1(b), Income Tax Regs., interpreting section 104(a)(1).  As explained in Rutter v. Commissioner, 760 F.2d 466, 468 (2d Cir. 1985), affg. T.C. Memo. 1984-525:

> A regulation, like a statute, is a rule of general applicability promulgated by a public agency to govern conduct within the agency's jurisdiction.  A labor contract, unlike a statute, is an agreement between union and employer, modifiable at any time.  * * *

Where the language of a collective bargaining agreement is by legislative act incorporated by reference into a municipal code, and by this measure is enacted into law, it meets the statutory and regulatory requirements described above.  Cf. Givens v. Commissioner, 90 T.C. 1145, 1149-1151 (1988).

The Collective Bargaining Agreement

Petitioners argue that their collective bargaining agreement is incorporated by reference into the Cranston City Code.  They point to Rhode Island State law, and the City Charter in conjunction with the City code.  We examine first the State law on which petitioners rely.

The Municipal Police Arbitration Act R.I. Gen. Laws secs. 28-9.2-1 through 28.9.2-16 (1986), establishes for police of the

State, "in any city or town all of the rights of labor other than the right to strike, or engage in any work stoppage or slowdown. To provide for the exercise of these rights, a method of arbitration of disputes is hereby established." R.I Gen. Laws sec. 28-9-9.2(b). It is the obligation of each city or town to meet and confer in good faith with representatives of the bargaining agent and to cause any agreement to be reduced to a written contract. R.I. Gen. Laws sec. 28-9.2-6. If the city or town and bargaining agent are unable to reach agreement, all unresolved issues must be submitted to arbitration. R.I. Gen Laws sec. 28-9.2-7. At R.I. Gen. Laws sec. 28-9.2-12, the Act provides that when an agreement is actually negotiated, it "shall constitute the collective bargaining contract governing policemen and said city or town for the period stated therein, provided that the period shall not exceed one [1] year."

We can find nowhere in the Act a requirement that all, or any collective bargaining agreement entered into by a city must be adopted and approved by "legislative acts" of the city council or be incorporated by reference into the city code. Although the City was a signatory to the agreement, petitioners have not shown that it was in fact adopted by "legislative act" of the City council or incorporated into the City's code, ordinances, or charter.

We also can find no support for petitioners' position in their citation of Chapter 3.16 of the City Charter. This

provision gives the City Council powers over organization of the City government including the power to control the "number, qualifications, powers, duties, hours of work and compensation of" employees of the city.

The agreement between the City and the Union was not incorporated by reference into the City ordinance. It stands by itself as a collective bargaining agreement, a contract, between the two entities. R.I. Gen. Laws sec. 28-9.2-12. The agreement does not have the force and effect of law and is modifiable at any time. See Rutter v. Commissioner, supra at 468 (labor contract does not qualify as a "statute" within the meaning of sec. 1.104-1(b), Income Tax Regs.); Covert v. Commissioner, T.C. Memo. 1990-598.

## Conclusion

We find that petitioners did not receive disability payments under a workers' compensation act or a statute in the nature of workers' compensation act. Petitioners' disability-pension payments must be included in gross income.

Decisions will be entered for respondent.